Mary Lloyd CHOPIN and Hazel Chopin Ramon, Appellants,

v.

INTERFIRST BANK DALLAS N A, Independent Executor of the Estate of William Phillip Tims Jr., Deceased Appellee.

No. 05–84–00487–CV.

Court of Appeals of Texas, Dallas.

June 7, 1985.

Rehearing Denied July 15, 1985.

---

William Andress, Jr., Dallas, for appellants.

William Frank Carroll and Richard E. Roberts, Stinson, Mag & Fizzell, T. Daniel Brittain, Carrington, Coleman, Sloman & Blumenthal, Dallas, for appellee.

Before GUITTARD, C.J., and WHIT-HAM and STOREY [1], JJ.

STOREY, Justice.

*On Motion For Rehearing*

Appellants and Appellee have filed motions for rehearing. We grant both motions, withdraw our opinion of March 22, 1985 and substitute the following as our opinion.

This is a summary judgment case in which the executor of the estate of William Phillip Tims Jr., deceased, recovered for the estate and against the surviving joint account party the sums remaining on deposit in three joint bank accounts. At issue are the requisites for affecting the nontestamentary disposition of decedent's interest in a joint bank account. The executor, InterFirst Bank Dallas N.A., contends that strict compliance with chapter 11 of the Probate Code, TEX.PROB.CODE ANN. §§ 436–50 (Vernon 1980), is necessary. The surviving joint party, Mary Loyd Chopin, contends that her contractual rights to the accounts vested before Tims' death under the Banking Code, TEX.REV.CIV. STAT.ANN. art. 342–706 (Vernon 1973). We hold, as did the trial court, that compliance with the Probate Code is required. Having concluded that the accounts were not in compliance with the Probate Code, we affirm the summary judgment in favor of the executor with respect to its recovery of the accounts and accrued interest. We reverse and remand the cause to the trial court for a redetermination of the damages awarded.

Before his death which occurred on January 27, 1983, Tims had established at Inter-First Bank Oak Cliff, solely with his own funds, three bank accounts: a certificate of deposit in the amount of $150,000; a checking account with a date of death balance of $177,872.14; and a certificate of deposit in the face amount of $40,000. Each account was issued to or stood in the name of "W.P. Tims, Jr., or Mary L. Chopin."

On January 28, 1983, Chopin closed the checking account and deposited the proceeds at First National Bank in Duncanville in a checking account styled "Mary L. Chopin or Hazel Chopin Ramon." Similarly, on March 3, 1983, Chopin cashed the $150,000 certificate and purchased another certificate in like amount at First National Bank in Duncanville. This new certificate was purchased in both Chopin's and Ramon's name. The record is unclear as to the disposition of $8,202.32 in interest which had accrued on this certificate at the date of its redemption. The $40,000 certificate remains at Interfirst Bank Oak Cliff.

Interfirst Bank Dallas N.A. as executor sued Chopin, Ramon, and the other two banks seeking a judgment declaring that the three accounts with accrued interest are assets of Tims' estate. After all parties had answered, the executor moved for summary judgment. Chopin also moved for summary judgment on the ground that the accounts were the subject of gifts made to her by Tims before his death. Ramon disclaimed any ownership rights in the accounts, but pleaded further for relief consistent with that sought by Chopin. The executor's motion was granted, and the executor was awarded substantially all of the relief sought, including a money judgment against Chopin and Ramon in the amount of $51,990.98.

Chopin has appealed contending that the court erred in not recognizing her "vested contractual rights with the decedent Tims and the depository bank ... under the exact terms of article 342–706 of the Banking Code." She urges, under this point, that section 439 of the Probate Code was enacted without mentioning article 342–706 of the Banking Code in its caption. We do not understand Chopin to argue that section 439 is unconstitutional because of this omission from its caption, but merely that it is ineffective to impair her "vested contractual rights" under article 342–706. She urges that the mere establishment of a

---

**1.** The Honorable Charles H. Storey, Justice, Fifth Court of Appeals, Dallas, retired, sitting by assignment.

joint account is sufficient to vest the right and that nothing further is required to effect a nontestamentary transfer of assets held in a joint account. We conclude that chapter 11 of the Probate Code is controlling in this case and that the accounts in question do not comply with the provisions of section 439 of chapter 11.

■ Article 342–706 of the Banking Code provides in part:

A bank may pay a present or future deposit payable to or on the order of (a) any one of two or more persons ... to any one of such joint depositors (before or after the death of the other joint depositor or depositors)....

It is clear from its language that this statute does not concern itself with ownership of funds on deposit but with the right to possession. Its purpose in providing that a bank *"may pay "* is simply to relieve the bank of liability for paying sums on deposit to either of the joint depositors. *See Worden v. Thornburg,* 564 S.W.2d 480 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.) (construing TEX.REV.CIV.STAT. ANN. art. 852a § 6.08 (Vernon 1964) "Savings Accounts in Two or More Names"); *Reed v. Reed,* 283 S.W.2d 311 (Tex.Civ.App. —Dallas 1955, no writ); *see also Davis v. East Texas Savings & Loan Association,* 163 Tex. 361, 354 S.W.2d 926, 931 (1962).

■ On the other hand, it is clear that chapter 11 of the Probate Code concerns itself with ownership of joint account funds as opposed merely to rights of possession. Chapter 11, entitled "Nontestamentary Transfers," is said to be "a comprehensive codification of rules dealing with nonprobate transfers at death through account agreements among depositors and financial institutions." McLaughlin, *Joint Accounts, Totten Trusts, And the Poor Man's Will,* 44 TEX.B.J. 871, 871 (1981). The Code provisions were adopted for the purpose, among others, of removing the confusion and uncertainty created by the then prevailing case law which had consistently held that parol evidence was admissible to determine the intent of the depositor in setting up a joint account.

In urging that the purpose of article 342–706 is not merely to relieve the bank of liability but also in some manner to create in the survivor a vested contractual right, Chopin relies upon language contained in *Brown v. Lane,* 383 S.W.2d 649 (Tex.Civ. App.—Dallas 1964, writ ref'd). We do not read *Lane* as an attempt in any manner to construe article 342–706. Rather, the court was there construing the joint deposit agreement, and its conclusion, while different from that which we reach, is not in conflict because *Lane* arose before the enactment of chapter 11. Furthermore, the conclusion which we reach leaves no conflict between section 439 and article 342–706 as Chopin contends.

■ We conclude that chapter 11 controls the disposition of this case. We now consider whether the accounts in question are in compliance with chapter 11. In this respect, section 439 provides in part:

(a) Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties against the estate of the decedent if, by a written agreement signed by the party who dies, the interest of such deceased party is made to survive to the surviving party or parties. A survivorship agreement will not be inferred from the mere fact that the account is a joint account....

. . . .

(d) In other cases, the death of any party to a multiple-party account has no effect on beneficial ownership of the account other than to transfer the rights of the decedent as part of his estate.

It is clear that under the statute a survivorship agreement will not be inferred merely from the establishing of a joint account. Instead, it is required that there be (1) a written agreement (2) signed by the decedent (3) which makes his interest "survive" to the other party. Additionally, section 441 of the Probate Code makes clear that nontestamentary transfers authorized by chapter 11 "are effective by reason of the account contracts involved and this statute." The intent of the decedent must,

therefore, be determined from the agreement, and extrinsic evidence may not be offered to prove intent. *Sheffield v. Estate of Dozier,* 643 S.W.2d 197 (Tex.App.— El Paso 1982, writ ref'd n.r.e.); *see also Otto v. Klement,* 656 S.W.2d 678 (Tex.App. —Amarillo 1983, writ ref'd n.r.e.). Finally, by the terms of the agreement the account must be "made to survive" to the remaining party.

■ Chapter 11 gives no instruction with respect to the terms of an agreement that will be sufficient to make an account "survive." We are authorized and will, therefore, look for instruction to the case law existing at the time of the enactment of chapter 11. *See Twin City Fire Insurance Co. v. Cortez,* 576 S.W.2d 786, 789 (Tex. 1978). Examples of these cases are *Krueger v. Williams,* 163 Tex. 545, 359 S.W.2d 48 (1962) and *Carnes v. Meador,* 533 S.W.2d 365 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.)—cases construing strikingly similar "made to survive" language contained in section 46 of the Probate Code. These cases demonstrate that language such as "payable to either or to the survivor" and "either depositor or the survivor may make withdrawals" is insufficient. These cases require that as a minimum the agreement must provide that the account "is held by them as joint tenants with the rights of survivorship" or equivalent language in order to vest *ownership* in the surviving party. *See Krueger,* 359 S.W.2d at 52; *Carnes,* 533 S.W.2d at 369.

■ Turning now to the accounts before us, we see that the $150,000 certificate was issued to "W.P. Tims, Jr., or Mary L. Chopin." The accompanying account card signed by both the depositors reads:

If there be more than one depositor upon the endorsement of any depositor the bank is hereby authorized to pay to either of them or upon the death of one to the survivor the funds represented by this certificate.

No mention is made of a joint tenancy or a right of survivorship. While the clause "pay to either of them or upon the death of one to the survivor" is sufficient to identify one to whom a delivery of possession is authorized, it is insufficient to vest ownership of the funds in the survivor.

■ Similarly, the checking account was held in "W.P. Tims, Jr., or Mary L. Chopin" and the signature card reads:

If an account is designated a joint account on the signature card depositors agree and direct that I.F.B.O.C. shall pay the funds in the account to or on the order of any one of such depositors or to or on the order of the duly authorized agent of any of them before or after the death of one of the depositors and after the death of all depositors to the estate of the last depositor to die.

This agreement does not meet the requirements of section 439(a) and, consequently, transferred no rights of ownership to the survivor, Chopin. It merely identifies the party or parties to whom the bank is authorized to deliver possession.

■ Finally, with respect to the $40,000 certificate, the record reveals that the decedent Tims did not sign the certificate or any account card. There being no "written agreement signed by the party who dies" the requisites of section 439(a) are not met, and no ownership interest was made to survive. We hold, therefore, that the court properly granted the executor's motion for summary judgment with respect to the three accounts at issue.

■ In the alternative, Chopin urges on appeal that common law intervivos gifts to her had been established as a matter of law and that summary judgment in favor of the executor in this case ignores the decedent's common law right to adeem certain of his properties. We do not agree. We have pointed out that chapter 11 presents the exclusive means for disposing of an interest in a joint account and that extrinsic evidence is inadmissible to prove a decedent's intent to the contrary. This is not to hold, as Chopin urges, that section 439(a) as so construed has the effect of abolishing intervivos gifts of accounts. For example, the decedent need only to remove his name from the account during

his lifetime and the section would not apply because it is expressly made to apply only to joint accounts. Furthermore, a determinable gift may be made simply by complying with section 439(a).

Nor has decedent's right to adeem been disturbed because here there is no effective intervivos disposition to give rise to an ademption. Additionally, ademption applies only to specific and not general or residual bequests.

 Chopin also urges that the trial court erred in making findings of fact. Findings of fact are inappropriate in a summary-judgment proceeding. *State v. Easley,* 404 S.W.2d 296, 297 (Tex.1966). However, we conclude that no harm resulted in this case because the material facts found to support the trial court's judgment and upon which our holdings are based were found by the court to be undisputed and, therefore established as a matter of law. The remaining facts found by the trial court are not material to our holdings and are, therefore, ignored.

Finally, Chopin and Ramon complain of the nature and amount of damages assessed against them. Specifically, it is urged that prejudgment interest was not authorized. The executor contends, on the other hand, that because the response to its motion for summary did not address the issue of prejudgment interest, the matter cannot be raised for the first time on appeal. We cannot agree with the executor's contention in this regard, because it failed to demonstrate as a matter of law that it was entitled to the full amount of prejudgment interest awarded by the trial court.

 The record on appeal shows that the executor's motion for summary judgment sought recovery of the principal of the accounts in question together with interest accrued to the date of judgment. Additionally, the motion sought judgment for a specified sum of prejudgment interest calculated from the date Chopin exercised possessory rights over the accounts. We hold that it was error to award prejudgment interest calculated from the date of possession.

While Chopin had no ownership interest in the accounts, she did have rights of possession under the joint account agreements. Thus, neither her nor Ramon's possession was unlawful until demand was made upon them. This is not to imply, however, that either Chopin or Ramon is entitled to the interest actually earned on the accounts before or during the time of their possession. According to the record, demand was first made on Chopin by the service of citation on the executor's petition. The record shows no demand made on Ramon. Her answer, however, constitutes a refusal and demand may be inferred from the date of her refusal, that is, the filing of her answer.

 We have considered Chopin's prejudgment interest point despite her failure to address the issue in her response to the motion for summary judgment. We hold that no response was necessary, because the motion and the summary-judgment evidence demonstrate that the executor failed to establish as a matter of law that it was entitled to prejudgment interest from the date of possession. Indeed, the motion and evidence establish the contrary. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979). Accordingly, we reverse that part of the judgment awarding prejudgment interest and remand the cause to the trial court for redetermination of such interest consistent with this opinion. We affirm the trial court's judgment in all other respects.

Affirmed in part and reversed and remanded in part. Costs of appeal to be assessed against appellee. TEX.R.CIV.P. 139.