Elward EPHRAN, Appellant,

v.

Hellena Evone FRAZIER, Appellee.

No. 13–91–497–CV.

Court of Appeals of Texas,
Corpus Christi.

Sept. 17, 1992.

James L. Phillips, Houston, for appellant.

John L. Roades, Wharton, for appellee.

Before NYE, C.J., and BISSETT[1] and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

BISSETT, Justice (Assigned).

This is an appeal by Elward Ephran, plaintiff in the trial court (hereafter "plaintiff"), from a summary judgment against him and in favor of Hellena Evone Frazier, Independent Executrix of the Estate of

1. Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1988).

Mary Lucille Hayes Cheatham, Deceased, defendant in the trial court (hereafter "defendant"). The case involves the question of whether two bank accounts were held by plaintiff in joint tenancy with the right of survivorship. We answer the question in the negative and affirm the trial court's judgment.

Mary Lucille Hayes Cheatham, formerly Mary L. Hayes, hereafter referred to as the "decedent," died testate in June of 1989. Her will was duly admitted to probate by the County Court of Wharton County, Texas, shortly after the death of decedent. Hellena Evone Frazier is the duly qualified and acting Independent Executrix of the Estate of the decedent, and will henceforth be referred to as the "defendant."

Plaintiff and the decedent opened a joint savings account (Account No. 3518–4074–3–1) in the Wharton Bank & Trust Co. on June 17, 1983; they also opened a joint checking account (Account No. 230–078) in the Wharton Bank & Trust Co. on June 21, 1985. In each instance, the parties executed a signature card and a depository agreement for each account; each recited that the account was made payable to "Elward Ephran or Mary L. Hayes." Each signature was on a printed form prepared by the Bank. The signature cards listed several types of accounts which could be opened. Included in the types of account were "Joint—With Survivorship," and "Joint—No Survivorship;" boxes appear opposite each type of account and the depositor(s) could mark the type desired. None of the boxes were marked to indicate the type of account opened on the signature cards for each account.

The savings account depository agreement with the Bank contained the following clause:

JOINT ACCOUNT—WITH SURVIVOR-SHIP. Each joint tenant intends and agrees that the account balance upon his death shall be the property of the survivor ...

The checking account depository agreement with the Bank contained the following clause:

JOINT ACCOUNT—WITH SURVIVOR-SHIP. Such an account is issued in the name of two or more persons each of you intend that upon your death the balance of the account ... will belong to the survivor(s) ...

Neither the signature cards nor the depository agreements state that the accounts are joint accounts *with the right of survivorship*. The savings account had a balance of $19,371.40 as of July 11, 1989, and the checking account had a balance of $2,525.81 as of June 30, 1989.

The record does not reveal the date when plaintiff filed his original petition; it is shown, however, that he filed his first amended original petition on January 18, 1991, whereby he asked for declaratory relief under the Uniform Declaratory Judgments Act, Tex.Civ.Prac. & Rem.Code Ann., Sections 37.004 through Section 37.-009. He alleged that the aforesaid account in the "name of Elward Ephran or Mary L. Hayes" are joint accounts and are non-testamentary, "as provided in Section 441, Tex. Probate Code," with right of survivorship in the survivor. He further alleged that there was a controversy between him and defendant relating to the ownership of the accounts. He prayed that it be determined that he is the owner of the joint bank accounts as his separate property, or that he is the owner of the joint accounts with right of survivorship.

Defendant alleged in her first amended original answer that the accounts are not survivorship accounts for the following reasons:

1. The style of the accounts "Mary L. Hayes or Elward Ephran" is insufficient to establish a joint account with a right of survivorship;

2. The signature cards and contracts with the Bank do not designate the accounts as being joint accounts with the right of survivorship; and

3. The signature cards on their face do not contain sufficient language to take them out of the probate estate.

Both parties filed motions for summary judgment and responses to the opposing

parties' motion for summary judgment. The trial court granted defendant's motion and denied plaintiff's motion. Plaintiff filed a motion for new trial, which was overruled by operation of law.

The trial court rendered judgment that plaintiff take nothing and that defendant is entitled to summary judgment as a matter of law, and further decreed that defendant recover from plaintiff all funds in "Accounts # 230–078 and # 3518–4974–3–1 at Wharton Bank & Trust Company, Wharton, Texas." Plaintiff has duly and timely perfected an appeal from the judgment. We affirm.

■ Plaintiff raises six points of error in his brief. However, all six turn on the question of whether or not there is a genuine issue as to any material fact in this cause as to whether the bank accounts, the subject of this cause, are joint accounts with the right of survivorship. Therefore, we discuss the six points raised in one discussion rather than repeating six discussions.

Tex.Prob.Code Ann. § 436(4) (Vernon 1980) defines a "joint account" as follows:

'Joint account' means an account payable on request to one or more of two or more parties whether or not there is a right of survivorship.

Tex.Prob.Code Ann. § 439(a) (Vernon 1980), in effect at all times pertinent to this appeal,[2] provided in relevant part:

Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties against the estate of the decedent if, by a written agreement signed by the party who dies, the interest of such deceased party is made to survive to the surviving party or parties. A survivorship agreement will not be inferred from the mere fact that the account is a joint account. . . .

Plaintiff argues that the language set out in the depository agreement is sufficient to bring the account within the requirements of section 439(a) of the Texas Probate Code and establish a joint tenancy with right of survivorship. He contends it is unnecessary to make a mark any of the boxes because it is clear that the language of the agreement, taken as a whole, shows that an account may be owned by an individual if there is only one accountholder named on the signature card, or in joint tenancy with right of survivorship if there are two or more accountholders. Plaintiff further argues that the language on the signature cards "payable to Elward Ephran or Mary L. Hayes," and signed by them, are sufficient to vest ownership of the funds in the joint account, and that the language on the back of the signature cards is evidence which raises a presumption creating survivorship rights in him because of the language in the depository agreements contains "Joint Accounts with Survivorship" hereinabove quoted. We do not agree with either argument.

Defendant argues that the signature cards required the marking of a box to expressly designate the accounts as joint accounts with right of survivorship, which was not done, and, therefore, the signature cards, together with the depository agreements, are insufficient to establish joint tenancy with right of survivorship because they do not satisfy the statutory requirements of Section 439(a) for such accounts. We agree.

Plaintiff relies primarily upon *Krueger v. Williams*, 163 Tex. 545, 359 S.W.2d 48 (1962) and *Sawyer v. Lancaster*, 719 S.W.2d 346 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). The reliance is misplaced.

In *Krueger*, a certificate of deposit in the amount of $10,000.00 was issued in the name of W.T. Williams and/or Mrs. Ida Mae Krueger, the daughter of Mr. Williams by a prior marriage. The certificate was not in evidence but the receipt card recited: "W.T. Williams and/or Ida Mae Krueger or payable to the survivor." Mr. Williams died and Mrs. Krueger, as executor of her father's will, filed an inven-

---

**2.** Amended by Acts of the 70th Legislature, ch. 297, effective August 31, 1987 (Vernon Supp. 1992).

tory of his estate which excluded the certificate as an asset of his estate, and claimed the funds evidenced by the certificate as her individual property. The probate court agreed, and Mrs. Williams, the surviving wife, appealed. The district court disagreed with the probate court and held, in effect, that half of the proceeds of the certificate belonged to Mrs. Krueger as a gift from her father and half to the community estate of her father and his surviving wife. The district court rejected the contention of Mrs. Krueger that the terms of the certificate created in her the right of survivorship. The Court of Civil Appeals reversed the judgment of the district court and rendered judgment that the entire proceeds of the certificate were community assets of the estate. The Supreme Court reversed the judgments of the district court and the Court of Civil Appeals, and, in essence, rendered judgment that the entire proceeds of the certificate were the individual property of Mrs. Krueger. The Supreme Court held: 1) the certificate does not "lie within the provisions of § 46 of the Probate Code," because "the recitation falls short of expressing a clear intention to vest the absolute right of the ownership of the funds in the survivor"; and 2) "[t]he phrase 'payable to the survivor' is not tantamount to the provision that 'the certificate is held by them as joint tenants with the right of survivorship.'" However, the Court further held that the certificate "does serve to vest in Mrs. Krueger some present interest in and control over the certificate as well as the contractual right to possession of the proceeds as survivor." The Court then stated: "We therefore say that it does create a presumption of such intention on the part of the purchaser (Mr. Williams) of the certificate and places the burden of proof on one claiming to the contrary." [3]

The Houston First Court of Appeals, in *Sawyer*, also a summary judgment case, addressed the issue of whether the decedent created a valid survivorship account. In April of 1983, Joseph Sawyer and Gertrude Lancaster executed a bank signature card for the bank account in issue. The card, among other statements, stated:

[T]he amount thereof shall be paid by Harrisburg Bank to us, or either of us, or the survivor of us, or to the executors, administrators or assigns of such survivor; or upon the written order of any such person so entitled to payment; and without reference to the original ownership of the moneys deposited.

*Sawyer*, 719 S.W.2d at 347.

After Joseph Sawyer's death in 1984, Ms. Lancaster brought an action for declaratory judgment against James W. Sawyer, the representative of Joseph Sawyer's estate, contending that the bank account of $92,000.00 passed to her as survivor. The probate court held that she was entitled to the funds. In the appeal that ensued, Sawyer claimed that the probate court erred in holding that the funds in the account passed to Lancaster, the surviving depositor of a joint account, because the bank signature card did not meet the requirements of section 439(a) of the Texas Probate Code. Lancaster responded by asserting that the bank signature card was sufficient to create a presumption of joint tenancy with right of survivorship, and that Sawyer failed to overcome the presumption. The appellate court affirmed the judgment of the probate court and held that Section 439(a) of the Probate Code did not repeal the presumption of the survivorship when an account includes direction that it is payable to the survivor.

Plaintiff's reliance upon *Dickerson v. Brooks*, 727 S.W.2d 652 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.) is also misplaced. In *Dickerson,* the Court relied on the signature card because it clearly provided in an unambiguous writing that there should be survivorship. There, the issue was whether the Certificate of Deposit itself needed survivorship language. The Court held that the signature card was controlling. The facts in *Dickerson* are different from the facts in the case now

---

**3.** Subsequent opinions indicate that the holding by the Supreme Court in *Krueger* was limited to the facts of that case. *See Forehand v. Light,* 452 S.W.2d 709, 710 (Tex.1970); *Quilter v. Wendland,* 403 S.W.2d 335, 339 (Tex.1966).

before this Court. In the instant case, the signature cards, together with the attendant depository agreements are not sufficient to establish a joint tenancy with right of survivorship.

Plaintiff also relies upon *Sheffield v. Estate of Dozier*, 643 S.W.2d 197 (Tex.App.—El Paso 1982, writ ref'd n.r.e.). That reliance is misplaced. In *Sheffield*, there was an account with unambiguous survivorship language. Not so in the appeal now before us. The contention of the estate in *Sheffield* was that the deceased did not intend the account to be a survivorship account. The Court held that the written word controls, and the intention of the deceased may not be considered in arriving at a decision of whether or not a joint account is a survivorship account.

Defendant, in support of her claim that the probate court correctly and properly denied plaintiff's motion for summary judgment, relies primary upon *Chopin v. InterFirst Bank Dallas NA*, 694 S.W.2d 79 (Tex.App.—Dallas 1985, writ ref'd n.r.e.), and *Stauffer v. Henderson*, 746 S.W.2d 533 (Tex.App.—Amarillo 1988), *aff'd*, 801 S.W.2d 858 (Tex.1990).

In *Chopin*, a summary judgment case, a certificate of deposit was issued to W.P. Tims, Jr., or Mary L. Chopin. The accompanying account card, signed by both depositors read:

> If there be more than one depositor upon the endorsement of any depositor the bank is hereby authorized to pay to either of them or upon the death of one to the survivor the funds represented by this certificate.

*Chopin*, 694 S.W.2d at 84.

W.P. Tims, Jr., died. InterFirst Bank (appellee), as executor of the W.P. Tims, Jr. estate, in the suit that was subsequently filed, contended that strict compliance with Chapter XI of the Probate Code prevented Ms. Chopin from taking the funds under survivorship. Ms. Chopin contended otherwise. No mention was made in the account card of a joint tenancy or a right of survivorship. The Dallas Court of Appeals concluded that even though the depositors could effect a non-testamentary transfer of rights in a joint account, the mere establishment of a joint account was not sufficient to infer a survivorship which would become effective under Section 439 of the Probate Code. The Court stated:

> It is clear that under the statute a survivorship agreement will not be inferred merely from the establishing of a joint account. Instead, it is required that there be (1) a written agreement (2) signed by the decedent (3) which makes his interest "survive" to the other party. Additionally, section 441 of the Probate Code makes clear that nontestamentary transfers authorized by chapter 11 "are effective by reason of the account contracts involved and this statute." The intent of the decedent must, therefore, be determined from the agreement, and extrinsic evidence may not be offered to prove intent. Finally, by the terms of the agreement the account must be "made to survive" to the remaining party. (Citations omitted.)

*Id.* at 83–84. Having held that the account card was insufficient to vest ownership of the funds evidenced by the certificate of deposit in Ms. Chopin as the survivor, the judgment of the probate court in favor of the executor of the estate of W.P. Tims, Jr., was affirmed.

The Amarillo Court of Appeals, in *Stauffer v. Henderson*, 746 S.W.2d 533 (Tex.App.—Amarillo 1988), *aff'd*, 801 S.W.2d 858 (Tex.1990), had before it a case where the question presented was whether a savings account standing in the name of Marian R. Henderson and Mary K. Stauffer was a joint account with the right of survivorship. Mrs. Henderson opened the joint account with community funds. Ms. Stauffer did not contribute any funds to the account. Mrs. Henderson died (apparently before January 1, 1985) and Ms. Stauffer withdrew all the funds in the account. J.D. Henderson, individually and as executor of the estate of his deceased wife, Marian K. Henderson, filed suit against Ms. Stauffer for conversion. The trial court, in a summary judgment case, held that there was no right of survivorship, and decreed that Mr. Henderson recover

the funds. The signature card, which was executed by both Mrs. Henderson and Ms. Stauffer, in pertinent part, stated:

> JOINT ACCOUNT—PAYABLE TO EITHER OR SURVIVOR ... We agree and declare that all funds now or hereafter deposited in this account are and shall be our joint property ... and that upon the death of either of us any balance in said account or any part thereof may be withdrawn by, or upon the order of the survivor.

*Stauffer,* 746 S.W.2d at 534.

The Amarillo Court of Appeals reformed the trial court's judgment by deleting any recovery for pretrial interest, and as reformed, affirmed the judgment of the lower court. The Court determined that the legislature, in enacting Chapter XI of the Probate Code, intended that there be specific, precise language creating survivorship rights before property could pass by survivorship, and that the language in the signature card was insufficient to create a joint account in Ms. Stauffer with right of survivorship. The Supreme Court affirmed, as has been heretofore noted.

Concerning the conflicts between the decisions of *Chopin* and *Sawyer,* the Supreme Court of Texas, in *Stauffer,* said:

> In *Sawyer v. Lancaster,* 719 S.W.2d 346 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), the court considered an account signature card which authorized payment to the surviving party but did not create a right of survivorship. The court observed: "Since the enactment of 439(a), every Texas case has held that evidence of the deceased person's intent is not admissible to alter a survivorship agreement." *Id.* at 349. However, the court held, relying on *Krueger,* that section 439(a) did not prohibit a rebuttable presumption that the depositor intended to create a right of survivorship even though the language of the signature card did not express that intent.
>
> In this regard, *Sawyer* conflicts with the result in *Chopin.* As we have noted above, a presumption regarding a joint account party's intent to create a right of survivorship is inconsistent with the necessity of a written agreement required by section 439(a). We therefore disapprove *Sawyer* to the extent it is inconsistent with this opinion.
>
> We agree with the courts of appeals which have held that section 439(a) allows neither extrinsic evidence nor a rebuttable presumption to create a right of survivorship which is not established by a written agreement signed by the deceased joint account party.

*Stauffer,* 801 S.W.2d at 865.

The Supreme Court held in *Stauffer:*

> Section 439(a) makes a written agreement determinative of the existence of a right of survivorship in a joint account. If such agreement is complete and unambiguous, then parol evidence is inadmissible, as with written agreements generally, to vary, add to or contradict its terms. *See Hubacek v. Ennis State Bank,* 159 Tex. 166, 317 S.W.2d 30, 32 (1958). Furthermore, no presumption can be created to contradict the agreement or to supply a term wholly missing from its provisions. Any such presumption would violate both the parol evidence rule by necessitating admission of extrinsic evidence to rebut the presumption, and the express prohibition of section 439(a) against inferring a right of survivorship from the mere creation of a joint account. Thus, if the terms of an agreement pertaining to a joint account are clear, the parties may not introduce extrinsic evidence of the parties' intent. Section 439(a) effectively overrules prior case law to the contrary.

*Id.* at 863–64.

> The account which Marian Henderson opened with Mary Stauffer is a joint account. *The only written agreement pertaining to that account is the signature card, which is quoted above. That card authorizes payment of funds to the survivor at the other party's death but does not create a right of survivorship.* We therefore hold under section 439(a) of the Probate Code that no right

of survivorship in the account exists....
(Emphasis added).

*Id.* at 865–66.

The recent case of *Kitchen v. Sawyer,* 814 S.W.2d 798 (Tex.App.—Dallas 1991, writ denied), is analogous to the instant case. There, Mrs. R.M. Park and Mrs. Jay Kitchen signed a signature card on June 1, 1987, to a Certificate of Deposit. The card designated both Park and Kitchen as account holders. The signature card had boxes to check whether the account was individual or a joint tenancy with a right of survivorship. Neither box was checked. The unchecked box relating to "Joint Tenancy with Right of Survivorship" reads:

Joint Tenancy With Right of Survivorship. The undersigned agree that all funds now or hereafter deposited in the account(s) with the Association are and shall be our joint property with the right of survivorship and that such funds may be paid to or on the order of any of us, either before or after the death of any of us. Any pledge of the account(s) to secure a loan by any of us shall not automatically terminate this joint tenancy.

*Kitchen,* 814 S.W.2d at 800.

Park died on July 8, 1988, leaving a will which devised portions of her estate to the defendants Ellie Sawyer, et al. Kitchen, the joint account holder, filed suit for the ownership of the Certificate of Deposit. The trial court rendered summary judgment for the defendants, holding that the signature card was unambiguous and created a joint tenancy with no right of survivorship. The trial court's judgment was affirmed by the Dallas Court of Appeals, relying upon *Chopin* and *Stauffer.*

Unquestionably, the accounts in the present case were joint accounts. However, as stated above, the signature cards had boxes, which, if marked, would have designated the account as either "Joint-with Survivorship" or "Joint-no Survivorship." Since all boxes were left blank, in order for this Court to hold that the signature cards, together with the depository agreements, created a survivorship, we would have to infer that the mere fact that the accounts were joint accounts was sufficient to bring them within the requirements of Section 439(a) of the Probate Code. This, we cannot do; the signature cards, along with the depository agreements, taken as a whole, do not designate the accounts as survivorship accounts; they do not satisfy all of the statutory requirements, including that each account 1) be in the form of a "written agreement," 2) be "signed by the party who dies," and 3) be worded as that "the interest of such deceased party is made to survive to the surviving party." *See, Kitchen,* 814 S.W.2d at 800. It is conclusively shown by the summary judgment evidence that the signature cards and depository agreements do not constitute joint accounts with the right of survivorship.

Section 439(a) of the Probate Code differs with respect to Section 46, in effect at the time of the decision in *Krueger v. Williams* (1962), in that Section 439(a) specifically provides that money on deposit at the death of a party to a joint account belongs to the survivor, or survivors, against the estate of the decedent, *"if, by a written agreement signed by the party who dies, the interests of such deceased party is made to survive to the surviving party or parties."* Therefore, in the absence of such an agreement in writing, as is the case here, the interest of a joint owner who does not survive the remaining joint owner (or owners), descends to and vests in his heirs or legatees, as the case may be. We conclude that the documents here in question are similar in their essentials to those in *Kitchen, Chopin* and *Stauffer,* and are not sufficient to create a joint account with right of survivorship. As was the case in *Kitchen, Chopin* and *Stauffer,* in the case at bar, while the signature cards, the only documents that were signed by the decedent, authorized the payment of funds to the survivor at the other party's death, *they did not create a right of survivorship. See, Stauffer,* 801 S.W.2d at 865–66. Plaintiff's points of error are overruled.

◼ Defendant contends in a cross point that the trial court erred in failing to award attorney's fees to her. She states in her brief that she hired an attorney in June,

1989, to handle an estate and agreed to pay $125.00 per hour for his services, and because of the actions of plaintiff, she has been dragged through numerous courts and incurred tremendous costs and expenses in fulfilling her duties as Independent Executrix of the Estate of Mary Lucille Hayes Cheatham, Deceased; that the litigation on the part of plaintiff has been in bad faith from the start and continues to be in bad faith to this date; that she has been forced to hire her attorney not only to do the routine probate of a will, but to represent her against a will contest alleging fraud, forgery and undue influence, and to represent her in this declaratory judgment action; that all of plaintiff's litigation, including this appeal, is frivolous; that there is no evidence or law to support his contentions; that her defense has forced her to be involved in depositions, interrogatories, requests for production, sanction hearings in both the County Court and the District Court, one jury trial, an appeal of the jury's verdict to the Court of Appeals, an appeal of the Court of Appeals holding to the Supreme Court, a mandamus action challenging modest sanctions against plaintiff to the Court of Appeals and also to the Supreme Court, plus the instant appeal.

In her motion for summary judgment, defendant requested that attorney's fees be awarded to her for defending her property. As summary judgment evidence, she included her own affidavit and her attorney's affidavit in support of request for attorney's fees. Her attorney's affidavit stated that reasonable attorney's fees for services from the inception of litigation through the summary judgment hearing is $25,625.00; that in addition, another $10,000.00 would be reasonable for performing post-judgment discovery, $3,000.00 for defending the judgment on appeal to the Court of Appeals and $3,000.00 for defending the judgment holding of the Court of Appeals to the Texas Supreme Court. Plaintiff filed summary judgment evidence objecting to the reasonableness of the amounts of attorney's fees requested by defendant.

The trial court did not award attorney's fees to either party. Defendant asks that this Court reverse the judgment of the trial court insofar as it failed to award attorney's fees to her and to render judgment awarding attorney's fees to her.

As already noted, this is a case where summary judgment was rendered in a suit for declaratory judgment. The only issues raised by plaintiff in his petition are "whether the two bank accounts are joint accounts with right of survivorship, and 2) whether he is entitled to attorney's fees." Defendant, in her answer to plaintiff's petition, asked the trial court to "order attorney's fees against plaintiff."

The attorney's fees requested by defendant are for legal services rendered in the instant actions, the suit for declaratory judgment, and also for legal services rendered in other matters which are foreign to the suit for declaratory judgment. The record does not justify a reversal and rendition of judgment for defendant concerning attorney's fees, as prayed for in her brief. Attorney's fees in the estate proceedings and in the other matters alluded to in her brief cannot be awarded her in this action, a suit for declaratory judgment; those legal services are foreign to the case at bar. The trial court properly refused to award attorney's fees to defendant. The cross point is overruled.

The judgment of the trial court is AFFIRMED.