### In re the ESTATE OF Chester Sam DELLINGER, Deceased.

### Joseph Dellinger, Appellant

v.

### Michael John Dellinger, Appellee.

### No. 05–06–00738–CV.

Court of Appeals of Texas, Dallas.

Jan. 23, 2007.

Rehearing Overruled Feb. 28, 2007.

Lawrence L. Mealer, Dallas, for Appellant.

John L. Freeman and Kathleen S. Cleaveland, The Barnes Law Firm, P.C., Dallas, for Appellee.

Before Justices MORRIS, LANG, and LANG–MIERS.

## OPINION

Opinion by Justice LANG.

Appellant Joseph Dellinger appeals the probate court's summary judgment which specifically concluded that a bank account was a joint account between appellee, Michael John Dellinger, and his deceased father, Chester Sam Dellinger, and appellee retained a right of survivorship. For the following reasons, we affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant and appellee, Michael John Dellinger, are brothers. Their father was Chester Sam Dellinger, the decedent. On July 7, 2003, Chester Sam Dellinger and appellee Michael John Dellinger opened a joint bank account with Advancial Federal

Credit Union.[1] When Chester Sam Dellinger died, the record reflects the Advancial Account was valued at approximately $234,000.

The Advancial Federal Credit Union Membership and Account Application, signed by both the decedent and appellee, contained nine individual information boxes. Information boxes one, two, and five of the application designated the account as a savings account, listing the decedent as a "member" and appellee as a "joint owner." Box seven, labeled "Payable on Death Designation," was left blank. Box eight, entitled "Signatures," contained the following language above the signature clause:

> "By signing, I/We agree to the terms and conditions of the Membership and Account Agreement, Truth–In–Savings Fee Schedule, Funds Availability Policy Disclosure, Electronic Funds Transfer Agreement, and to any amendment the Credit Union makes from time to time which are incorporated herein. I/We acknowledge receipt of a copy of the Account Agreement and Disclosures applicable to the account(s)."

Both the decedent and appellee signed the application on the lines provided in Box Eight. At the bottom of the first page of the application, which included the eight boxes referred to above, the following words appear: "INSTRUCTIONS ON REVERSE SIDE." Then, on the reverse side, at the top of the page, the application states, "To complete the membership application." That statement was followed by several definitions, including for the terms "Joint Owner" and "Payable on Death (P.O.D.) Designation." The two terms were defined as follows:

> "Joint Owner. You may designate a joint owner(s) for your account. Please note that designating a joint owner gives the individual(s) access to all of your deposits with Advancial except an Individual Retirement Account (IRA) and that the joint owner's notarized signature is required to remove the joint owner from your account.

> Payble on Death (P.O.D.) Designation. You may designate a P.O.D. beneficiary on your account(s). A P.O.D. will aid in expediting distribution of your deposits to your beneficiaries. If you designate joint owners as well as P.O.D. on an account, joint ownership will take precedence over the P.O.D. Please note that a P.O.D. does not replace a will."

In addition to the application, the decedent and appellee both received a copy of the document entitled, "Account Agreement, Disclosures and Privacy Policy," which provided in pertinent part:

> 3. Multiple Party Accounts. An account owned by two or more persons is a multiple party account.

> > a. Rights of survivorship. Unless otherwise stated on the Account Application, a multiple party account includes rights of survivorship. This means when one owner dies, all sums in the account on the date of death vest in and belong to the surviving party(ies) as his or her separate property and estate.

Chester Sam Dellinger died on February 17, 2005, and left a will dated August 19, 1986. The will provided a $5,000 bequest to a grandson and a residuary clause which divided his estate into equal shares between his two sons, the appellant and appellee. Appellee was the executor of his father's estate. He filed an inventory listing the total value of the estate to be

---

1. The following day, Debra Lynn Dellinger was added as a joint owner of the bank account when she signed the application. She is not a party to this appeal.

approximately $117,000. The Advancial Account was not listed as part of the estate.

On November 11, 2005, appellant brought a declaratory judgment action against appellee, individually and in his capacity as executor of the estate, requesting the probate court declare the Advancial Account was a joint account and include the proceeds in the decedent's estate. Also, appellant alleged his brother, the appellee, breached his fiduciary duty as executor by commingling the proceeds of the joint account with his personal funds. Appellee filed a general denial.

On January 10, 2006, appellant filed a motion for partial summary judgment asking the court to declare the Advancial Account a joint account and include the proceeds in the decedent's estate. In response, appellee filed a motion for summary judgment requesting the court declare the Advancial Account a joint account with a right of survivorship and to dismiss appellant's claims against him. In his motion, appellee argued the language in paragraph 3(a) of the "Account Agreement, Disclosures and Privacy Policy," set out above, was expressly incorporated by the signature clause in box eight of the application. Accordingly, the joint account, "unless otherwise stated," was one which included a right of survivorship. On May 1, 2006, the probate court granted appellee's motion for summary judgment. Thereafter, appellant dismissed the breach of fiduciary duty cause of action and this appeal followed.

## II. MOTION FOR SUMMARY JUDGMENT

In his sole issue on appeal, appellant argues the probate court erred when it granted appellee's motion for summary judgment, and declared the Advancial Ac-

count was a joint account and appellee retained a right of survivorship. Appellee responds there was no error because the signed joint Account Application expressly incorporated by reference the "Account Agreement, Disclosures and Privacy Policy," which stated a joint bank account "includes a right of survivorship."

### A. Standard of Review

The standard for reviewing a traditional summary judgment is well-established. *See Sysco Food Servs. v. Trapnell,* 890 S.W.2d 796, 800 (Tex.1994); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *First Union Nat. Bank v. Richmont Capital Partners I, L.P.,* 168 S.W.3d 917, 923 (Tex.App.-Dallas 2005, no pet.). We review a summary judgment *de novo* to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp. of Am.,* 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied); *First Union Nat. Bank,* 168 S.W.3d at 923. A party moving for traditional summary judgment carries the burden of establishing that no material fact issue exists and that it is entitled to a judgment as a matter of law. Tex.R. Civ. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 23 (Tex.2000)(per curiam); *First Union Nat. Bank,* 168 S.W.3d at 923. A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982); *First Union Nat. Bank,* 168 S.W.3d at 923. When reviewing a motion for summary judgment, the court takes the nonmovant's evidence as true, indulges every reasonable inference in favor of the nonmovant, and resolves all doubts in favor the nonmovant. *Willrich,* 28 S.W.3d at 23–4; *First Union Nat. Bank,* 168 S.W.3d at 923.

### B. Applicable Law

Section 439(a) of the Texas Probate Code governs the creation of a right of survivorship in a joint account and provides:

"an agreement is sufficient to confer an absolute right of survivorship on parties to a joint account under this subsection if the agreement states in substantially the following form: 'On the death of one party to a joint account, all sums in the account on the date of death vest in and belong to the surviving party as his or her separate property and estate.' A survivorship agreement will not be inferred from the mere fact that the account is a joint account." TEX. PROB. CODE ANN. § 439(a)(Vernon 2003).

In 1993, the Texas Legislature enacted Section 439A, entitled "Uniform Single-Party or Multiple Party Account Form." *See* TEX. PROB.CODE ANN. § 439A (Vernon 2003). This section provides form language to establish particular types of accounts. *Id.* § 439A(b). The probate code states in pertinent part that a financial institution may vary the format of the form and "make disclosures in the account agreement or in any other form which adequately discloses the information provided in this section." *Id.* § 439A(c). Section 439A has been construed to be a "supplement to section 439(a), adding alternative acceptable forms of survivorship language." *Allen v. Wachtendorf,* 962 S.W.2d 279, 283 (Tex.App.-Corpus Christi 1998, pet. denied).

■ In order for an account to comply with the requirements of section 439(a), there must be (1) a written agreement, (2) signed by the decedent, (3) which makes his interest "survive" to the other party. *Chopin v. InterFirst Bank Dallas,* 694 S.W.2d 79, 83 (Tex.App.-Dallas 1985, writ ref'd n.r.e.). In *Stauffer v. Henderson,* the Supreme Court stated, "the necessity of a written agreement signed by the decedent to create a right of survivorship in a joint account is emphatic." *Stauffer v. Henderson,* 801 S.W.2d 858, 863 (Tex.1990). "It is uniformly held that an unsigned paper may be incorporated by reference in the paper signed by the person sought to be charged." *McNeme v. Estate of Hart,* 860 S.W.2d 536, 541 (Tex. App.-El Paso 1993, no writ)(citing *Owen v. Hendricks,* 433 S.W.2d 164, 166 (Tex. 1968)).

■ An account signature card is a type of contract, and, therefore, must be "read, considered, and construed in its entirety in keeping with the general principles of contract interpretation." *Allen,* 962 S.W.2d at 282 (citing *State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 433 (Tex.1995)(outlining canons of contract interpretation)). Generally, it is not proper to rely on a single clause or paragraph apart from the rest of the agreement to ascertain the intent of the parties and meaning of the agreement. *Id.* at 282. "However, if it appears that only one paragraph deals with the matter, the intent of the parties may be determined from that paragraph alone." *Id.* at 282 (citations omitted). "Extrinsic evidence, regardless of whether it favors or disfavors the creation of a right of survivorship, will not be considered." *Allen,* 962 S.W.2d at 282 (citing *Stauffer,* 801 S.W.2d at 863–64).

**C. Application of Law to Facts**

■ Appellant argues the Advancial Account does not include a right of survivorship because the application does not contain an unambiguous written contract signed by the decedent establishing his intent to create such an account. In support of this argument, appellant argues the "Payable on Death Designation" box on the application was intentionally left blank. This, he urges, demonstrates an intent not

to create an account with a right of survivorship. We disagree.

■ In order to establish a joint account with a right of survivorship, the Texas Probate Code requires a written agreement signed by the decedent sufficient to confer an absolute right of survivorship. TEX. PROB.CODE ANN. § 439(a); *Stauffer v. Henderson*, 801 S.W.2d at 863; *Chopin*, 694 S.W.2d at 83. Further, the probate code states that a financial institution may "make disclosures in the account agreement or in any other form which adequately discloses the information." TEX. PROB. CODE ANN. § 439A(c).

The record reflects the Account Application is signed by both the decedent and appellee. Critical language is in the application just above the signature lines:

> By signing, I/We agree to the terms and conditions of the Membership and Account Agreement, Truth–In–Savings Fee Schedule, Funds Availability Policy Disclosure, Electronic Funds Transfer Agreement, and to any amendment the Credit Union makes from time to time which are incorporated herein. *I/We acknowledge receipt of a copy of the Account Agreement and Disclosures applicable to the account(s).* (emphasis added)

It is clear from the italicized language the "Account Agreement, Disclosures and Privacy Policy" are incorporated by reference. The "Account Agreement, Disclosures and Privacy Policy" expressly states, "Unless otherwise stated on the Account Application, a multiple party account includes rights of survivorship." This language is sufficient to confer a right of survivorship because "it is uniformly held that an unsigned paper may be incorporated by reference in the paper signed by the person sought to be charged." *McNeme*, 860 S.W.2d at 541.

As an additional argument, appellant contends the "Payable on Death Designation" in box seven of the application was left blank because the decedent did not intend to create a joint account with a right of survivorship. We disagree on this argument as well. Although the case of *Allen v. Wachtendorf* involved an account signature card, rather than an account application, the reasoning is instructive. *See Allen*, 962 S.W.2d at 282. In *Allen*, the court scrutinized an account signature card on which a box was checked for a "Multiple–Party Account–With Survivorship." The definition for this term was provided on a second page. *Id.* at 282. The court reasoned that a contract must be "read, considered, and construed in its entirety" in accordance with general principles of contract construction. *See Allen*, 962 S.W.2d at 282. Accordingly, the court held the combined language from the two pages of the account signature card established a joint account including a right of survivorship. *Id.*

We apply the principles of contract construction recognized in *Allen*. The Account Application, the contract in the instant case which included the definitions of terms, must be "read, considered, and construed in its entirety" in accordance with general principles of contract construction. *See Allen*, 962 S.W.2d at 282. According to the reverse side of the Account Application, the terms "Joint Owner" and "Payable on Death Designation" were defined as follows:

> "Joint Owner. You may designate a joint owner(s) for your account. Please note that designating a joint owner gives the individual(s) access to all of your deposits with Advancial except an Individual Retirement Account (IRA) and that the joint owner's notarized signature is required to remove the joint owner from your account.

Payble on Death (P.O.D.) Designation. You may designate a P.O.D. beneficiary on your account(s). A P.O.D. will aid in expediting distribution of your deposits to your beneficiaries. If you designate joint owners as well as P.O.D. on an account, joint ownership will take precedence over the P.O.D. Please note that a P.O.D. does not replace a will." if the joint owner information and the payable on death designation

The terms, as defined in the application in the above quoted language, instruct that a "Joint Owner" and a "Payable on Death Designation" are not the same. Further, the "Account Agreement, Disclosures and Privacy Policy," that is incorporated by reference, expressly states, "Unless otherwise stated on the Account Application, a multiple party account includes rights of survivorship." Therefore, in applying general principles of contract construction, the fact that the "Payable on Death Designation" box was left blank on the application is not determinative. *See Allen,* 962 S.W.2d at 282.

Accordingly, we conclude the probate court did not err when it granted appellee's motion for summary judgment finding that the Advancial Account was a joint account between the decedent and appellee with appellee retaining a right of survivorship. Appellant's sole issue is resolved against him.

### III. CONCLUSION

The probate court did not err when it granted appellee's motion for summary judgment. The judgment of the probate court is affirmed.