COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| WESLEY KENNEMER, INDEPENDENT EXECUTOR OF THE ESTATE OF LOREN SMITH BARTOO, DECEASED, | § § § | No. 08-10-00127-CV |
| Appellant, | § | Appeal from the |
| | | County Court at Law No. 2 |
| v. | § | of Parker County, Texas |
| FORT WORTH COMMUNITY CREDIT UNION, | § § | (TC# CIV 10-0315) |
| Appellee. | | |

**O P I N I O N**

Wesley Kennemer, as Independent Executor of the Estate of Loren Smith, appeals the trial court's summary judgment in favor of Fort Worth Community Credit Union (FWCCU). In a single issue, he contends that the trial court erred by finding an agreement conveying survivorship rights on Billie Bartoo, Loren's wife, to an account containing over $97,000. For the reasons that follow, we affirm.

**BACKGROUND**

Based on the facts of this case, it appears to be the practice of FWCCU to assign a member identification number to its customers. From that member identification number, a customer's account is not labeled with a separate identification or account number but merely referenced as "Account #1" or "Account #2" based on the number of accounts a customer may have. The written and signed "Application for Membership," which the parties refer to as the Account Membership Card or Signature Card, refers to the member identification number, not to each individual account identified by the membership number, and therefore, sets the terms and conditions for all accounts falling under that membership number.

In 1952, Loren Bartoo opened a share (savings) account at FWCCU.[1]  He was assigned Membership Number 1064-0, and his account was labeled Account #1.  After marrying, his wife, Billie Bartoo, was added as a joint owner under the same membership number sometime between December 1985 and March 1986.  According to the "Application for Membership" card, the parties agreed that all funds on deposit "shall be owned by [them] jointly, with rights of survivorship."  The Application also stated that the parties agreed "to the terms and conditions of any account that [they] have in the credit union now or in the future and agree that the credit union may change those terms and conditions from time to time."  The Application referenced Membership Number 1064-0 and was signed by both Loren and Billie.

On June 3, 1986, Account #4, a cash-management or money-market account, was opened under the same membership number.  Because both accounts were opened prior to June 1998, FWCCU did not require separate signature cards for each account falling under a membership number; rather, only one signature card was required that related to the membership number, which would then follow all accounts opened under that membership number.  Further, in July 2003, FWCCU revised its Account Information Booklet, which contained a section entitled "Terms and Conditions of Your Account" and stated that if multiple parties are included on an account, they own the account in proportion and that on the death of a party, that deceased party's ownership passes to the surviving party.

According to the membership statement for Membership Number 1064-0, which was addressed to both Loren and Billie, it appears that $97,029.93 was transferred from Account #4 to Account #1 on November 20, 2003, and that five days later, those funds were transferred back to

---

[1]  At the time the account was opened, the Credit Union was known as Fort Worth Federal Employees Federal Credit Union.

Account #4.[2]  At the time of the transfer, Account #1 only earned 0.50 percent in interest, whereas Account #4 earned 1.51 percent.  Prior to the transfer, on November 2, 2003, Loren died.  Relying on the Application for Membership card, which conferred rights of survivorship, FWCCU believed all funds pertaining to Membership Number 1064-0 belonged to and were owned by Billie, as survivor.  Thus, FWCCU paid those funds to Billie.

Almost one year later, Kennemer, as Independent Executor of Loren's estate, sued FWCCU, complaining of the Credit Union's determination to pay those funds remaining in Account #4 to Billie.  According to Kennemer, those funds were community funds without any enforceable written survivorship agreement, and therefore, Kennemer sought to recover one-half of those funds from the Credit Union.  Kennemer also sued Billie and Billie's heirs.[3]  FWCCU denied the claims and moved for summary judgment.  The trial court subsequently granted summary judgment in favor of FWCCU and severed Kennemer's remaining claims.

## DISCUSSION

In his sole issue presented for our review, Kennemer asserts that the trial court erred in granting summary judgment in favor of FWCCU.  According to Kennemer, the survivorship agreement was executed prior to the creation of Account #4 and therefore only related to Account #1, not to any future accounts that were opened by the parties.  Rather, Kennemer argues that a new written agreement was required to set the terms and conditions of Account #4, including what survivorship the account may have, if any.  Thus, Kennemer concludes that the trial court erred by finding that the funds on deposit in Account #4 were subject to the agreement conveying

---

[2]  Although not found in the clerk's record, the parties contended during oral argument that the Credit Union, on its own motion, transferred those funds to Account #1 and then later reversed the transfer.

[3]  Billie died after appearing in the case.

survivorship rights on Billie.

*Standard of Review*

We review summary judgments *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *In re Estate of Rogers*, 322 S.W.3d 361, 363 (Tex. App. – El Paso 2010, no pet.); *First Union Nat. Bank v. Richmont Capital Partners I, L.P.*, 168 S.W.3d 917, 923 (Tex. App. – Dallas 2005, no pet.). We take the nonmovant's evidence as true, indulge every reasonable inference in favor of the nonmovant, and resolve all doubts in favor the nonmovant. *Valence Operating Co.*, 164 S.W.3d at 661; *Rogers*, 322 S.W.3d at 363; *First Union Nat. Bank*, 168 S.W.3d at 923. To be entitled to a summary judgment, the moving party must establish that no material fact issue exists and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Rogers*, 322 S.W.3d at 363; *First Union Nat. Bank*, 168 S.W.3d at 923.

*Applicable Law*

Section 439(a) of the Texas Probate Code governs the creation of a right of survivorship in a joint account, providing that "an agreement is sufficient to confer an absolute right of survivorship on parties to a joint account . . . if the agreement states in substantially the following form: 'On the death of one party to a joint account, all sums in the account on the date of the death vest in and belong to the surviving party as his or her separate property and estate.'" TEX. PROB. CODE ANN. § 439(a) (West 2003). In 1993, the Texas Legislature enacted Section 439A, entitled "Uniform Single-Party or Multiple-Party Account Form," as a supplement to Section 439(a)'s acceptable forms of survivorship language. *See* Acts 1993, 73rd Leg., R.S., ch. 795, § 2, 1993 Tex. Gen. Laws 3154, 3154, eff. Aug. 30, 1993 (codified at TEX. PROB. CODE ANN. § 439A (West Supp. 2010); *In re Estate of Dellinger*, 224 S.W.3d 434, 438 (Tex. App. – Dallas 2007, no pet.). Although Section 439A provides form language to establish particular types of accounts, it also states that a financial

institution may vary the format of the form and "make disclosures in the account agreement or in any other form which adequately discloses the information provided in this section." *Id*. § 439A(b), (c). In essence, the requirements for the creation of a right of survivorship to a joint account are that there be (1) a written agreement, (2) signed by the decedent, (3) which makes his interest "survive" to the other party. *Dellinger*, 224 S.W.3d at 438.

An account signature card, being a type of contract, must be "read, considered, and construed in its entirety in keeping with the general principles of contract interpretation." *Allen v. Wachtendorf*, 962 S.W.2d 279, 282 (Tex. App. – Corpus Christi 1998, pet. denied). Although it is not proper to rely on a single clause or paragraph to ascertain the intent of the parties and meaning of the agreement, "if it appears that only one paragraph deals with the matter, the intent of the parties may be determined from that paragraph alone." *Id*. at 282; *see also Dellinger*, 224 S.W.3d at 438.

*Application*

Kennemer argues that the written agreement, the Application for Membership card, confers a right of survivorship as to Account #1 only, not to Account #4. According to Kennemer, only Account #1 was in existence when Billie was added as a joint owner. Thus, he concludes that a separate written agreement containing a right of survivorship was required when Account #4 was opened years later.

However, Kennemer fails to acknowledge that the Application for Membership card conferred rights of survivorship pertaining to Membership Number 1064-0, not to a specific account. Indeed, the Application for Membership card does not refer to "Account #1" but rather states that the parties agree that the terms and conditions are controlling as to "*any* account that [they] have in the credit union now or in the future." (Emphasis added.) As the right-of-survivorship language is not contested save as to which account it applied to, we find that right of survivorship, by the plain

terms of the Application for Membership card, applied to all accounts created under Membership Number 1064-0.

Moreover, we find other evidence in the record to support the parties' intention to create a joint right of survivorship for all accounts bearing Membership Number 1064-0. Indeed, the Application for Membership card is signed by both Loren and Billie, and acknowledges that the parties would be bound by future terms adopted by the Credit Union. FWCCU's Account Information Booklet was changed in July 2003 to provide that if multiple parties are included on an account, they own the account in proportion and that on the death of a party, that deceased party's ownership passes to the surviving party. Such language tracks that found in Section 439A(b), and provides further support for finding of a right of survivorship in Billie for all accounts. *See Dellinger*, 224 S.W.3d at 440 (holding language in the "Account Agreement, Disclosures and Privacy Policy" was sufficient to confer a right of survivorship).

Further, both Account #1 and Account #4 are referenced by Membership Number 1064-0, and the Credit Union's statement, which lists the specifics of both accounts, is addressed to both Loren and Billie. Such are other factors which support the trial court's finding that both Loren and Billie owned Account #4 jointly with rights of survivorship.

In short, based on our entire review of the record and the evidence presented, we find that the survivorship language found in the Application for Membership card applied not to a certain, specific account, but to all accounts falling under Membership Number 1064-0. Kennemer cites no statutes or cases that provide that a written agreement containing survivorship language is required for each account at a financial institution and cannot simply be applied, as here, to each membership

number that would apply to all accounts falling under that number.[4]  Accordingly, we hold that the trial court properly granted summary judgment in favor of FWCCU and overrule Kennemer's sole issue.

## CONCLUSION

Having overruled Kennemer's sole issue, we affirm the trial court's judgment.

GUADALUPE RIVERA, Justice

March 9, 2011

Before Chew, C.J., McClure, and Rivera, JJ.

---

[4] That is not to say that we approve of FWCCU's practices as they, as demonstrated by this case, cause confusion and may lead to unwanted litigation.  Rather, we believe the better practice would be to have a separate account number and written agreement as to survivorship rights for each account.