**Affirm and Opinion Filed March 31, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-01132-CV

### RHONDA MIMS-BROWN, Appellant

### V.

### BESSIE R. BROWN, Appellee

### On Appeal from the 160th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. 10-09706-H

## OPINION

Before Justices Moseley, FitzGerald, and Evans
Opinion by Justice FitzGerald

This case involves a dispute over funds distributed from a joint tenancy account. Rhonda Mims-Brown, appellant, challenges the trial court's summary judgment in favor of Bessie Brown.[1] In five issues, Rhonda contends the trial court erred in granting summary judgment in favor of Bessie because the account did not meet the statutory requirements for a joint tenancy with right of survivorship, Bessie's receipt of the funds constituted a breach of fiduciary duty and self-dealing, the wills of Bessie and her deceased husband were contractual, and Bessie's conduct constituted a violation of the theft liability act. Concluding appellant's arguments are without merit, we affirm the trial court's judgment.

---

[1] Because many of the people in this case share the same last name, they will be referred to in this opinion by their first name.

# BACKGROUND

Bessie married Carl W. Brown in 1968. Between May 1968 and April 2000, Bessie and Carl jointly operated, managed, and/or leased certain parcels of real property (the "Brown Land") owned by Carl and his son Wayne. In 1991, Wayne married Rhonda.

Carl died on April 6, 2000. Carl's will bequeathed all of his undivided 1/2 interest in the Brown Land to his son Wayne, and one-half (1/2) of the net income produced from the Brown Land to Bessie for the remainder of her life. On December 21, 2000, Bessie, acting in her capacity as the independent executrix of Carl's estate, executed an special warranty deed conveying Carl's undivided one-half (1/2) interest in the Brown Land to Wayne as his sole and separate property.

On or about May 15, 2003, Wayne sold the Brown Land to a third party for $332,952.04. Four days later, Wayne used the proceeds to open an account at Southwest Securities, Inc. (the "Account"). When Wayne completed the new account application, he selected "Joint Tenancy With Right of Survivorship" as the type of account he wished to open. The new account application incorporates the language in the customer information brochure as well as any amendments. Bessie was listed as the co-applicant on the Account, and the application was signed by both Bessie and Wayne. After the account was opened, Southwest Securities sent Bessie and Wayne monthly statements styled, "Wayne C. Brown/Bessie R. Brown JTWROS."

In the ensuing years, Southwest Securities amended its customer information brochure several times. In November 2007, the customer information brochure was amended to include additional language pertaining to "Survivorship of Parties in a Joint Account." Specifically, the amendment stated that any application in which the "Joint Tenants with Right of Survivorship" box has been marked, "on the death of any account holder, the deceased party's ownership of the account passes to the surviving account holders."

Wayne died on January 18, 2008. On February 19, 2008, Southwest Securities turned the $277,831.88 balance of the Account over to Bessie.

In August of 2010, Rhonda filed the underlying lawsuit against Bessie. Rhonda asserted claims for malicious conversion, violation of the Texas Theft Liability Act, breach of fiduciary duty, self-dealing, and constructive trust on the grounds that she and the Estate of Wayne C. Brown are the rightful owners of the funds held in the Account. Rhonda also sought declaratory relief that the wills and first codicils of Bessie and Bessie's deceased husband, Carl, are "contractual," and therefore prevent Bessie from disposing of any of her property prior to her death.

Bessie answered the lawsuit and filed a counterclaim for declaratory relief. Rhonda filed a motion for partial summary judgment and Bessie filed a traditional and no-evidence motion for summary judgment. The parties each filed objections to the other party's summary judgment evidence. After conducting a hearing, the trial court signed an order granting Bessie's motion and objections and denying Rhonda's motion and objections.

Rhonda subsequently moved for rehearing of the summary judgment rulings and also filed a motion for judgment. Bessie responded. The court conducted an additional hearing and denied Rhonda's motions. Bessie nonsuited her counterclaim, and the court entered a final judgment as to Rhonda's claims.

## ANALYSIS

### Standard of Review

All of Rhonda's appellate issues challenge the trial court's summary judgment in favor of Bessie. We review the trial court's decision to grant summary judgment de novo. *Tex. Mun. Power Agency v. Pub. Util. Comm'n,* 253 S.W.3d 184, 192 (Tex. 2007). After adequate time for discovery, a party without the burden of proof at trial may move for summary judgment on the

ground that there is no evidence of one or more essential elements of a claim or defense. TEX. R. CIV. P. 166a(i). Once a no-evidence motion has been filed in accordance with Rule 166a(i), the burden shifts to the nonmovant to bring forth evidence that raises a fact issue on the challenged element. *See Macias v. Fiesta Mart, Inc.*, 988 S.W.2d 316, 317 (Tex. App.—Houston [1st Dist.] 1999, no pet.). A no-evidence summary judgment is essentially a pretrial directed verdict. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009).

The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact concerning one or more essential elements of the plaintiff's claims and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion and present to the trial court any issues that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979). Review of a summary judgment under either a traditional standard or no-evidence standard requires that the evidence presented by both the motion and the response be viewed in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding all contrary evidence and inferences unless reasonable jurors could not. *Gish*, 286 S.W.3d at 310; *Walmart Stores, Inc. v. Rodriquez*, 92 S.W.3d 502, 506 (Tex. 2002); *Nixon*, 690 S.W.2d at 548–49.

When a party moves for both a no-evidence and a traditional summary judgment, we first review the trial court's summary judgment under the no-evidence standard of Rule 166a(i). *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). If the no-evidence summary judgment was properly granted, we do not reach arguments under the traditional motion for summary judgment. *See id.*

***Did the Account Meet the Statutory Requisites for Joint Tenancy with Right of Survivorship?***

–4–

In her first two issues, Rhonda asserts the trial court erred in granting summary judgment in favor of Bessie because the Account did not meet the statutory requirements for creation of a joint tenancy with right of survivorship. Rhonda also contends the trial court erred in determining that section 440 of the probate code is inapplicable to the facts of this case.[2]

The creation of a right of survivorship to a joint account requires (1) a written agreement, (2) signed by the decedent, (3) which makes his interest "survive" to the other party. *In re Estate of Dellinger*, 224 S.W.3d 434, 438 (Tex. App.—Dallas 2007, no pet.); *Chopin v. Interfirst Bank Dallas*, 694 S.W.2d 79, 83 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). These requirements are set forth in section 439(a) of the probate code, which provides that "an agreement is sufficient to confer an absolute right of survivorship on parties to a joint account . . . if the agreement states in substantially the following form: 'On the death of one party to a joint account, all sums in the account on the date of the death vest in and belong to the surviving party as his or her separate property and estate.'" TEX. PROB. CODE ANN. § 439(a) (West Supp. 2013). Section 439A, entitled "Uniform Single–Party or Multiple–Party Account Form," supplements section 439(a)'s acceptable forms of survivorship language. *See* TEX. PROB. CODE ANN. § 439A (West Supp. 2013); *Dellinger*, 224 S.W.3d at 438. Under section 439A, the "Multiple-Party Account With Right of Survivorship" account option includes the following suggested language:

> The parties to the account own the account in proportion to the parties' net contributions to the account. The financial institution may pay any sum in the account to a party at any time. On the death of a party, the party's ownership of the account passes to the surviving parties.

*See* TEX. PROB. CODE ANN. § 439A (West Supp. 2013). Rhonda insists that the failure to use the specific language set forth in section 439A is fatal to the establishment of a joint tenancy with

---

[2] Effective January 1, 2014, the Texas Probate Code was repealed and recodified in the Texas Estates Code. *See* Acts 2009, 81st Leg., R.S., ch. 680; Acts 2011, 82nd Leg., R.S., ch. 823 (H.B.2759); Acts 2013, 83rd Leg., R.S., ch. 982 (H.B.2080). The new codification is "without substantive change," and its purpose is to make the law "more accessible and understandable." *See* TEX. ESTATES CODE ANN. § 21.001 (West 2013). Because this action was filed prior to the repeal and recodification of the Texas Probate Code as the Texas Estates Code, we cite to the provisions of the probate code in effect at the time the trial court's judgment was signed.

right of survivorship, and in the absence of such language the Account must be evaluated under the "more stringent requirements" of section 439(a). We are not persuaded by this argument.

It is undisputed that the Brown Land that Wayne inherited from his father was Wayne's sole and separate property. It is also undisputed that the proceeds from the sale of that property were Wayne's sole and separate property subject to Bessie's right to half the net income. The summary judgment evidence reflects that Wayne opened the Account with the proceeds from the sale of the property. Bessie was listed as the "co-applicant" on the Account. Both Wayne and Bessie signed the new account application. The application included fourteen choices for the type of account to be created; Wayne and Bessie selected "Joint Tenants with Right of Survivorship" by placing an "x" in the box next to this account designation. The remaining thirteen boxes next to the other types of accounts were left blank.

The new account application incorporates by reference the customer information brochure. Wayne and Bessie acknowledged their understanding of this with their signatures. The customer information brochure provides, in pertinent part:

> You understand and acknowledge that SWST may modify and change the terms and conditions set forth herein without notice.
>
> Binding Upon Customer's Estate. Customer hereby agrees that this Agreement and all the terms thereof shall be binding upon the customer's heirs, executors, administrators, personal representatives, and assigns.

The customer information brochure further states that, "[t]he authority hereby conferred shall remain in force until your broker receives written notice of the revocation." There is nothing in the record to suggest that Wayne or Bessie ever provided the broker with such revocation, nor is there anything to suggest that the type of account was changed.

When the Account was opened, Wayne and Bessie also signed a "checking application and agreement." The document includes the designation, "Wayne C. Brown/Bessie R. Brown

JTWROS." The summary judgment evidence also includes account statements from 2003 to 2007 that include the same designation.

In 2007, Southwest Securities amended the customer information brochure to include additional language concerning joint accounts. The amendment stated:

> If the Joint Tenants with Right of Survivorship box has been marked, on the death of any account holder, the deceased party's ownership of the account passes to the surviving account holders.

All that is required to make an interest "survive" to another party is a word or phrase expressing that the interest of the deceased party will survive to the surviving party. *See In re Estate of Wilson*, 213 S.W.3d 491, 494–95 (Tex. App.—Tyler 2006, pet. denied). Significantly, both section 439(a) and section 439A contemplate that the exact language of the statute need not be employed. In this regard, section 439(a) provides:

> [A]n agreement is sufficient to confer an absolute right of survivorship on parties to a joint account . . . if the agreement states **in substantially the following form** . . . .

TEX. PROB. CODE ANN. § 439(a) (emphasis added); *see also Holmes v. Beatty*, 290 S.W.3d 852, 858 (Tex. 2009) (stating statutory language or a substitute "in substantially the same form" is required under section 439(a)). Similarly, section 439A provides:

> A contract of deposit that contains **provisions substantially the same** as in the form provided . . . establishes the type of account selected by the party.

TEX. PROB. CODE ANN. § 439A (emphasis added). Section 439A also states that a financial institution may vary the format of the form and "make disclosures in the account agreement or in any other form which adequately discloses the information provided in this section." § 439A(c), (d); *see also Kennemer v. Fort Worth Comm. Credit Union*, 335 S.W.3d 843, 846 (Tex. App.— El Paso 2011, pet. denied) (tracking statutory language).

The 2007 amendment to the customer information brochure, which stated that "the deceased party's ownership of the account passes to the surviving account holders" is substantially the same as the statutory language in section 439(a) (stating "all sums in the account on the date of death vest in and belong to the surviving party") as well as section 439A (stating "the party's ownership of the account passes to the surviving parties"). The account application expressly provided that the customer information brochure was incorporated into the terms of the account and that Southwest Securities could change the terms and conditions of the account without notice. "It is uniformly held that an unsigned paper may be incorporated by reference in the paper signed by the party sought to be charged." *McNeme v. Estate of Hart*, 860 S.W.2d 536, 541 (Tex. App.—El Paso 1993, no writ). Bessie and Wayne both signed the account application. Thus, the incorporated language of the 2007 customer information brochure, together with the account application and account documents describing the account as "JTWROS" were sufficient to confer a right of survivorship. *See Dellinger*, 224 S.W.3d at 438.

We reject Rhonda's assertion that section 440 precludes consideration of the 2007 amendment to the customer information brochure in conjunction with the other account documents. As the trial court properly concluded, section 440 is inapplicable to the instant case.

Section 440 provides:

> The provisions of Section 439 of this code as to rights of survivorship are determined by the form of the account at the death of a party. Notwithstanding any other provision of the law, this form may be altered by written order given by a party to the financial institution to change the form of the account or to stop or vary payment under the terms of the account. The order or request must be signed by a party, received by the financial institution during the party's lifetime, and not countermanded by other written order of the same party during his lifetime.

TEX. PROB. CODE ANN. § 440 (West 2003). This provision contains the procedure for changing a properly established joint account with right of survivorship to some other type of account. *See Rogers v. Shelton*, 832 S.W.2d 709, 711 (Tex. App.—Eastland 1992, writ denied). There is

nothing in the record to suggest that Wayne or Bessie ever notified Southwest Securities, in writing or otherwise, that they wished to change the Account from a joint tenancy with right of survivorship to some other type of account. Instead, the record reflects only that Southwest Securities amended the account documents for the Account. Thus, section 440 does not apply in the instant case.

Because the summary judgment conclusively demonstrates that the Account was a joint tenancy with right of survivorship and section 440 does not apply, the trial court did not err in granting Bessie's motion for summary judgment on these issues. Rhonda's first two issues are overruled.

### Did Bessie Breach a Fiduciary Duty by Engaging in Self-Dealing?

Bessie was the executrix of the estate of her husband Carl, and Wayne was a beneficiary of Carl's estate. Rhonda asserts, in her capacity as the executrix of Wayne's estate, that the creation of the Account and the acquisition of the proceeds occurred when Bessie was the executrix of Carl's estate, and therefore Bessie breached her fiduciary duty to Wayne by engaging in self-dealing. Bessie contends, *inter alia*, that summary judgment was appropriate because there is no evidence she owed a fiduciary duty to Wayne at the time the Account was created or when the proceeds of the Account were distributed.[3]

The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant. *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied). The fiduciary duties of an executor of an estate are the same as the fiduciary duties of a trustee.

---

[3] Bessie also summarily states that the limitations period for a breach of fiduciary duty claim has expired. However, as Bessie's response to plaintiff's motion for partial summary judgment states, "Bessie withdrew her statute of limitations defense in her first amended answer and counterclaim."

*Humane Soc'y, Etc. v. Austin Nat'l Bank*, 531 S.W.2d 574, 577 (Tex. 1975). As trustee of the estate's property, the executor is subject to high fiduciary duties. *Id.* at 577. As a fiduciary, an executor has a duty to protect the beneficiaries' interest by fair dealing in good faith with fidelity and integrity. *Geeslin v. McElhenney*, 788 S.W.2d 683, 685 (Tex. App.—Austin 1990, no writ). His personal interests may not conflict with his fiduciary obligations to the estate. *See Humane Soc'y, Etc.*, 531 S.W.2d at 577.

Self-dealing can be generally defined as an occurrence in which the fiduciary uses the advantage of his position to gain a benefit at the expense of those to whom he owes a fiduciary duty. *See Jochec v. Clayburne*, 863 S.W.2d 516, 521 (Tex. App.—Austin 1993, writ denied) (discussing self-dealing of trustee as defined in jury charge); *see also Gonzalez v. Am. Title Co.*, 104 S.W.3d 588, 598 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (discussing self-dealing of escrow agent who "places its interests in conflict with its obligations to the beneficiaries").

Rhonda relies on testimony from Bessie's deposition to establish that as the executrix of Carl's estate Bessie remained in a fiduciary relationship with Wayne, a beneficiary of the estate. During her deposition, Bessie acknowledged she never resigned as the executrix of Carl's estate or formally requested closure of the estate. In response to Rhonda's argument, Bessie maintains that formal closure of the estate was not required.

When there is no pending litigation, an independent executor may close an independent administration by filing a formal account verified by affidavit. *See In re Estate of Bean,* 206 S.W.3d 749, 759 (Tex. App.—Texarkana 2006, pet. denied). These statutory closing procedures, however, are not mandatory; the final distribution of an estate's assets after all debts and claims against the estate are paid results in the closing of the estate. *Interfirst Bank-Houston v. Quintana Petroleum Club*, 699 S.W.2d 864, 874 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

But neither Bessie's nor Rhonda's contentions resolve the issue. Here, there is no evidence that the estate was formally closed or that the final distribution of all assets and payment of all debts occurred. Nonetheless, despite the lack of evidence to demonstrate whether Carl's estate remained open or had been closed by operation of law, there is nothing to establish a fiduciary relationship between Wayne and Bessie at the time the Account was opened or when the proceeds were distributed.

The relationship between an executrix and the estate's beneficiaries is one that gives rise to a fiduciary duty as a matter of law. *See Huie v. DeShazo*, 922 S.W.2d 920, 923 (Tex. 1996). This duty arises from the executrix's status as trustee of the property of the estate. *Humane Soc'y*, 531 S.W.2d at 577. The executrix's right to possession of estate property exists as to "the estate as the estate existed at the death of the testator or intestate." TEX. PROB. CODE ANN. § 37 (West 2003). At the time of Carl's death, the property of his estate included the Brown Land.

It is undisputed that Bessie conveyed the interest in the Brown Land—the property of the estate over which she had control and was required to distribute—to Wayne in 2000 in accordance with the express terms of Carl's will. It is also undisputed that the Brown Land then became Wayne's sole and separate property. As such, it was no longer an asset of the estate, and therefore no longer entrusted to Bessie for safekeeping. Wayne sold the Brown Land and established the Account in 2003. Bessie received the proceeds of the Account in 2008. Neither of the latter two transactions occurred in the context of administration of Carl's estate.

There is no evidence concerning any creditors' claims or unpaid debts remaining for Carl's estate. Rhonda cites no authority, nor are we aware of any, that would continue the fiduciary's obligation with regard to estate property not subject to creditors' claims years beyond the time the property is distributed to the beneficiary and after the very character of the original

–11–

asset has changed to that of a non-probate asset.[4] Such an expansive application chills the spirit and intent of fiduciary obligations far beyond the parameters of the punctilio.[5] The record here contains no evidence of such a duty.

A fiduciary duty may arise from a formal relationship or from an informal relationship involving a high degree of trust and confidence. *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176 (Tex. 1997). Although Rhonda's fiduciary duty argument is premised on a formal relationship (Bessie's role as the executrix of Carl's estate), Rhonda also cites numerous cases involving a fiduciary duty arising out of an informal special relationship. To the extent Rhonda intended to argue that a fiduciary duty existed by virtue of some informal relationship of trust and confidence, we reject the argument. There is no evidence of such a relationship here.

Because there is no evidence of a formal or informal fiduciary relationship between Bessie and Wayne at the time the Account was created or when the funds were distributed, there is no evidence to support the existence of a fiduciary duty. Accordingly, the trial court did not err in granting summary judgment on Rhonda's claims for breach of fiduciary duty and self-dealing. Rhonda's third issue is overruled.

### Was Rhonda Entitled to Declaratory Judgment?

In the court below, Rhonda sought a declaratory judgment that the wills of Carl and Bessie constituted "mutual and contractual wills" and became an enforceable contract once Carl's will was admitted to probate. Rhonda asserted that Wayne, as a beneficiary of Carl's will, is entitled to seek enforcement of the contract, and requested a declaration that Bessie may not dispose of her estate during her lifetime in a manner that is inconsistent with the terms of her

---

[4] A multi-party account such as a POD account or joint tenancy with right of survivorship account is a non-probate asset that passes independently of an estate according to the terms of the account. *See* TEX. ESTATES CODE ANN. §§ 113.001-.004, 113.151,113.155 (West 2014); *see also Punts v. Wilson*, 137 S.W.3d 889, 892 (Tex. App.—Texarkana 2004, no pet.) (stating POD account not asset of estate).

[5] *See Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928) (describing fiduciary relationship as "the punctilio of an honor most sensitive").

–12–

contractual will with Carl. In her fourth issue, Rhonda argues the trial court erred in denying her request for declaratory relief.

The Uniform Declaratory Judgments Act ("UDJA") is intended "to settle and to afford relief from uncertainty and insecurity with respect to rights . . . and it is to be liberally construed and administered." TEX. CIV. PRAC. & REM. CODE ANN. § 37.002 (West 2008). The UDJA provides that "**[a] person interested** under a . . . will . . . may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (emphasis added). Spouses, creditors, or "any others having a property right in, or claim against" **an estate being administered** are "interested persons" with standing to contest a will or construe its provisions and they may do so in a declaratory judgment action. *See* TEX. PROB. CODE ANN. § 3(r) (West Supp. 2011) (emphasis added); *In re Estate of Florence,* 307 S.W.3d 887, 891–92 (Tex. App.—Fort Worth 2010, no pet.).

Initially, we observe that Rhonda fails to explain how she is an "interested person" in "an estate being administered." There is no evidence that Carl's estate is still being administered, and of course, there is no current administration as to Bessie's estate because Bessie is still alive. As our sister court has observed, "[i]t is not the policy of the State of Texas to permit those who have no interest in a decedent's estate to intermeddle therein." *Cranberg v. Wilson*, No. 03-03-00389-CV, 2004 WL 101794, at *2 (Tex. App.—Austin Jan 23, 2004, no pet.) (mem. op.) (discussing interested party in context of will contest).

But even if Rhonda were an interested person, there is nothing to establish the existence of any real controversy to be resolved by the court. A declaratory judgment is appropriate when a real controversy exists between the parties and the entire controversy may be determined by judicial declaration. *Public Util. Comm'n v. City of Austin*, 728 S.W.2d 907, 911 (Tex. App.—

Austin 1987, writ ref'd n.r.e.). To constitute a justiciable controversy for declaratory judgment purposes, there must be a real and substantial controversy involving a genuine conflict of tangible interest, rather than a theoretical one. *See Scurlock Permian Corp. v. Brazos Cnty.*, 869 S.W.2d 478, 487 (Tex. App.—Houston [1st Dist.] 1993, writ denied). Courts may not give advisory opinions or decide cases upon speculative, hypothetical, or contingent situations. *Coalson v. City Council of Victoria*, 610 S.W.2d 744, 747 (Tex. 1980).

Here, Rhonda does not identify any controversy with respect to Carl or Bessie's will that is appropriate for declaratory resolution. Therefore, the trial court did not err in granting summary judgment in favor of Bessie on Rhonda's request for declaratory relief. Rhonda's fourth issue is overruled.

### *Did Bessie's Conduct Constitute a Violation of the Texas Theft Liability Statute?*

In her fifth issue, Rhonda maintains the trial court erred in granting summary judgment on her claim against Bessie under the Texas Theft Liability Statute.[6] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 134.001-.005 (West 2012). But Rhonda concedes that if Bessie establishes her right to the proceeds of the Account, "she could avoid liability under the TTLA." We have concluded that the Account was a joint tenancy with right of survivorship account, and therefore Bessie was entitled to the proceeds. Our resolution of this issue obviates the need to address Rhonda's fifth issue. *See* TEX. R. APP. P. 47.1.

---

[6] Although Rhonda's statement of the issue also references conversion, Rhonda did not brief the conversion issue. Therefore, it is waived. *See* TEX. R. APP. P. 38.1.

–14–

Having resolved all of Rhonda's issues against her, we affirm the trial court's judgment.


121132F.P05

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RHONDA MIMS-BROWN, Appellant

No. 05-12-01132-CV       V.

BESSIE R. BROWN, Appellee

On Appeal from the 160th Judicial District Court, Dallas County, Texas
Trial Court Cause No. 10-09706-H.
Opinion delivered by Justice FitzGerald.
Justices Moseley and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee BESSIE R. BROWN recover her costs of this appeal from appellant RHONDA MIMS-BROWN.

Judgment entered March 31, 2014

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE