**Affirmed; Opinion Filed February 16, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

## No. 05-17-01146-CV
_____

## IN THE INTEREST OF Z.H., A MINOR CHILD

On Appeal from the 256th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DF-16-03051

# MEMORANDUM OPINION

Before Justices Lang, Evans, and Schenck
Opinion by Justice Evans

After a jury trial, Mother appeals the trial court's order terminating her parental rights to

Z.H.[1]  In three issues, Mother generally challenges the legal and factual sufficiency of the evidence

to support the jury's findings in support of termination.[2]  For the reasons set forth below, we affirm

the trial court's order.

---

[1] The trial court's termination order was signed on January 30, 2017.  Mother filed her notice of appeal in the trial court on February 13, 2017.  However, the notice of appeal was not forwarded to or received by this Court until almost eight months later, on October 2, 2017 at which time the case was docketed.  The clerk's record was filed on October 16, 2017 and the reporter's record was filed on November 13, 2017.  Mother filed her appellate brief on December 19, 2017.  The State filed its brief on January 31, 2018.  The case was submitted on February 15, 2018.

[2] Mother had four children – two by Father1 and two by Father2. At the trial, the Department sought and ultimately obtained termination of Mother's parental rights with respect to all four of her children as well the termination of Father1's parental rights.  Father2 had his parental rights to the third child and Z.H. terminated pursuant to agreement. Mother appeals only the termination order for Z.H.

## BACKGROUND

In February 2016, the Dallas County Child Protective Services Unit of the Texas Department of Protective and Regulatory Services (the Department) received a referral for neglectful supervision from Parkland Hospital indicating that Mother had tested positive for marijuana when she gave birth to Z.H. A hospital social worker testified at trial that Mother was referred to her because of Mother's history of drug use. The social worker stated that Mother told her she used marijuana during her pregnancy to cope with nausea and vomiting.

At the time of the February 2016 referral, Mother had three other children and a history of five previous referrals with the Department. In fact, the Department had an existing open case from March 2015 at the time of Z.H.'s birth.[3] Oral swab drug screens administered to Mother and Z.H.'s father on June 1, 2015 came back positive for cocaine. Father told the caseworker this could have resulted from smoking a cigarette from a friend who is known to lace them with cocaine. Mother told the caseworker she also smoked a cigarette from the same friend. A special investigator with the Department testified that he spoke to Mother on June 1 about some of her Facebook posts about using the drug Ecstasy. Mother told the special investigator she did not use the drug and her friends posted that message.

On June 18, 2015, Mother informed the caseworker that she was pregnant but would not be using marijuana during her pregnancy. Nevertheless, a hair sample collected from Mother on

---

[3] The case was initiated with a report of physical and medical neglect of Z.H.'s sibling, Mother's youngest child at that time. There were concerns that when Mother had visits with the child, she was not giving him his breathing treatments/medications (the child was living with a paternal grandparent). Father2 also complained that during a visit exchange, Mother's vehicle struck the rear of his vehicle while he and the child were in the car. There was evidence that during the caseworker's visit on March 6, Mother had struck Father2's vehicle with a board. The caseworker testified that at time of her visit, Mother's older two children were also not living with her. The oldest child was living with the maternal grandmother and the remaining child was living with another relative. The caseworker had trouble locating and contacting Mother and did not speak with her until June 1, when Mother called to ask if the Department had cut off her food stamps.

June 23 tested positive for marijuana. The older children were placed in foster care a few days later as a result of substance abuse and supervision issues.[4]

Mother admitted she tested positive for marijuana on a urine test the day Z.H. was born and acknowledged she used marijuana while pregnant with Z.H. At trial, she stated that she used marijuana while she was pregnant with all but her oldest child. She testified that during a previous pregnancy, her doctor had said it was okay for her to use marijuana "because my baby would gain weight. It would help me gain weight and it would stop the nausea and the abdominal pains that I was having at the time." At trial, CPS investigator Aaron Rider testified that in June 2014, Z.H.'s brother tested positive for marijuana at birth and before that, the Department had the exact same allegations for Mother's second child.

Mother admitted that she did not have an obstetrician while she was pregnant with Z.H. and indicated the last time she used marijuana was "a little before I had Z.H." She also indicated she stopped using about four months into her pregnancy. She denied daily use.

There was evidence that after Z.H. was born, Mother was incarcerated from June 9, 2016 through September 23, 2016 for assaulting a police officer. Mother testified that she took drug treatment, anger management, counseling, and parenting classes during her time in jail awaiting trial. Caseworker Lorraine Walker acknowledged that Mother completed anger management and parenting classes while incarcerated, but denied she completed any drug treatment or individual counseling as ordered. Mother stated she attempted two or three times to get treatment at Nexus, but they did not have a referral for her from the Department.

After subtracting the visits she could not attend because of her incarceration, there were sixty weeks of visitation available to Mother since the children had been placed in foster care in

---

[4] Maternal grandmother and Father2, two of the children's caretakers, also tested positive for marijuana. At the time of their placement in foster care, all three children were under five years old. None of the children were living with Mother at the time of their removal.

June 2015. Mother attended just twelve visits in total and only three of those were after Z.H. was born. Mother blamed her failure to attend visitation with the children on lack of transportation, being pregnant and, in March 2016, the abusive relationship she was in with Z.H.'s father.

Mother testified she currently lived in a furnished two bedroom apartment and that her mother helped her pay the rent. As of the date of trial, however, Mother had never given the Department the address for it to conduct a home visit.

Walker testified that Z.H. and her three siblings were currently placed together in an adoptive foster home. The Department's plan for the children was for that home to adopt the children. Walker testified that she had concerns about Mother's bonding with the children, her stability, and her drug use.

## ANALYSIS

### A.     Standard of Review

Before the trial court may order the termination of parent-child relationship, the petitioner must establish by clear and convincing evidence (1) the existence of at least one statutory ground for termination and (2) termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161(b)(1)-(2) (West Supp. 2017). Our appellate review of factual and legal sufficiency challenges reflects the elevated burden of proof at trial in parental termination cases. *See In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014) (factual sufficiency); *In re J.F.C.*, 96 S.W.3d 256, 264–66 (Tex. 2002) (legal sufficiency).

For legal sufficiency challenges, we consider all the evidence in the light most favorable to the finding to assess whether a reasonable factfinder could form a firm belief or conviction that the finding is true. *See* TEX. FAM. CODE ANN. § 101.007 (West 2014); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). We therefore assume the factfinder resolved disputed facts in favor of its finding if it reasonably could do so and disregard evidence that a reasonable factfinder could have

–4–

disbelieved. *See id*. (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). For challenges to the factual sufficiency of the evidence, we examine whether, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of the finding is so significant such that it could not constitute a firm belief or conviction. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

### B. Section 161.001(b)(1)(D)

In her first and second issues, Mother contends that the evidence is legally and factually insufficient to support the jury's finding pursuant to section 161.001(b)(1)(D). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Subsection D states that the court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. *Id*. "Endanger" means to expose to loss or injury or to jeopardize, but it is not necessary that the child actually suffer injury. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996).

Mother argues that because the Department took possession of Z.H. the day she was released from the hospital immediately after her birth, there is no factual basis for the jury's finding that Mother violated subsection D. Underlying Mother's argument is her contention that subsection D exclusively addresses living conditions and the child's physical surrounding and does not concern drug use which is "conduct of the parents toward the child." We do not agree with Mother's contention.

Under subsection D it is necessary to examine evidence related to the environment of the child to determine if the environment was a source of endangerment to his physical or emotional well-being. *See In re S.H.A.*, 728 S.W.2d 73, 84 (Tex. App.—Dallas 1987, writ ref'd n.r.e.); *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). Although the endangerment

analysis under subsection D focuses on evidence of the child's living environment, the environment produced by the parent's conduct is relevant to the determination of whether the child's surroundings threaten his well-being. *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Drug use during pregnancy constitutes conduct that endangers a child's physical and emotional well-being. *See In re J.T.G.*, 121 S.W.3d at 125. In fact we have found several cases in which termination pursuant to subsection D was affirmed when a mother used illegal drugs while pregnant. *See Dupree v. Tex. Dept. of Prot. & Reg. Servs.*, 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ); s*ee also In re K.L.B.*, No. 14-09-00061-CV, 2009 WL 3444833 (Tex. App.—Houston [14th Dist.] July 16, 2009, no pet.) (mem. op.) (mother tested positive for drugs when child born prematurely); *In re B.R.*, No. 02-11-0146-CV, 2011 WL 5515502 (Tex. App.—Fort Worth Nov. 10, 2011, no pet.) (mem. op.) (mother used drugs while pregnant and was high when she gave birth).

Moreover, at the time of Z.H.'s removal, Mother's three other children had been in foster care for over seven months because of substance abuse and supervision issues and Mother had not completed any ordered services from her open case with the Department. Prior to their placement in foster care, none her children were living with Mother and the Department had trouble locating and contacting Mother for months after the March 2015 referral. Mother was unemployed and unable to show how she could take care of the baby. Mother's suggestions for voluntary placement for Z.H. had already been denied by the Department in the open case. From the evidence at trial, we conclude the jury could have reasonably formed a firm belief or conviction that Mother's lack of a stable home along with a pattern of marijuana use during her two previous pregnancies and during her pregnancy with Z.H., despite intervention and services offered in previous cases, created an environment dangerous to Z.H. Accordingly, we resolve Mother's first and second issues against her.

## C.   Best Interest Finding

Mother's third issue contends that the evidence is legally and factually insufficient to support the jury's finding that termination of Mother's parental rights was in Z.H.'s best interest. In her brief, however, Mother has not provided any argument with respect to this issue. Accordingly, this issue presents nothing for us to review. *See* TEX. R. APP. P.38.1; *Mims-Brown v. Brown*, 428 S.W.3d 366, 377 n.6 (Tex. App.—Dallas 2014, no pet.) (issue not briefed on appeal is waived). Nevertheless, our review of evidence relevant to the best interest finding under the applicable standards reveals the evidence was legally and factually sufficient to support the jury's determination that termination of Mother's parental rights was in Z.H.'s best interest.

## CONCLUSION

Based on the record before us, the trial court's order terminating Mother's parental rights to Z.H. is affirmed.

171146F.P05

/David Evans/
DAVID EVANS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF Z.H., A MINOR
CHILD

No. 05-17-01146-CV     V.

On Appeal from the 256th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DF-16-03051
Opinion delivered by Justice Evans,
Justices Lang and Schenck participating.


In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 16th day of February, 2018.