COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| IN THE MATTER OF THE ESTATE OF JEANNETTE FENENBOCK | § | No. 08-23-00146-CV |
| GLENNA GADDY, | § | Appeal from the |
| Appellant/Cross-Appellee. | § | Probate Court No. 2 |
| v. | § | of El Paso County, Texas |
| MARK FENENBOCK, | § | (TC# 2017-CPR00510) |
| Appellee/Cross-Appellant. | | |

## MEMORANDUM OPINION

This is an appeal and cross-appeal from a probate court's order directing the independent executor of an estate to make a partial distribution of assets from the residuary clause in the decedent's will into a family trust. For the reasons set forth below, we conclude that the probate court's order is not an appealable order and dismiss the appeal for want of jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Jeannette Fenenbock's will and estate plan

After her death in November 2016, Jeannette Fenenbock's two children, Mark Fenenbock and Glenna Gaddy, became embroiled in a protracted series of disputes involving her will and a

1

family trust established for their benefit. This matter involves a dispute over the administration of the will, and relatedly, to the terms of the family trust.

Jeannette's will, which named Glenna the independent executor of the estate, was admitted to probate in May 2017. In her will, Jeannette made a specific bequest of her jewelry to Glenna and directed that her personal property be distributed to both children in a manner determined by Glenna. It contained a residuary clause providing for the "rest and residue" of her estate to be placed in a trust that Jeannette and her late husband, Bernard Fenenbock, had created in 2008 (the Family Trust) "to be held, administered and distributed in accordance with the terms of the trust agreement governing same."

The trust agreement provided that upon the death of both Jeannette and Bernard, Mark and Glenna were to be co-trustees of the Family Trust. And after paying all debts associated with their parents' deaths, the trustees were to collect all trust assets and distribute them in accordance with the agreement's terms. Those terms included making gifts to family members, including the Fenenbocks' granddaughter, Lauren Fenenbock, and honoring the bequests made in the will. It then directed the trustees to distribute the remaining assets in equal shares to each of the individual trusts created for the benefit of Mark and Glenna, respectively. Pursuant to an October 2012 amendment to the trust agreement that Jeannette made after Bernard's death, as part of that distribution process, all shares in the W. Silver Recycling, Inc. (W. Silver) family business were to be allocated to Glenna's trust, and "assets of an equivalent value" were to be allocated to Mark's trust.

B. **The trust litigation**

As explained in our opinion in *Matter of Tr. A & Tr. C,* in April 2017, Glenna, acting

2

without Mark's consent, transferred the shares of the W. Silver stock to her individual trust, then sold the shares to her sons who were running the business. *Matter of Tr. A & Tr. C, Established Under Bernard L. & Jeannette Fenenbock Living Tr. Agreement, Dated March 12, 2008*, 651 S.W.3d 588, 592–93 (Tex. App.—El Paso 2022, pet. granted), *review granted* (Dec. 15, 2023). Mark thereafter filed a lawsuit against Glenna, which we refer to as the "trust litigation," seeking a declaration that he and Glenna were co-trustees of the Family Trust, and that Glenna lacked the authority to make the transfer without his consent. *Id.* at 593. He sought to have the shares returned to the Family Trust. *Id.* After the probate court ruled that Mark and Glenna were indeed co-trustees and that Glenna lacked the authority to make the transfer without Mark's consent, Glenna responded that even if the transfer had been improper, the correct remedy was to obtain a valuation of the stock and place the equivalent value into Mark's trust. The court disagreed and ruled that the proper remedy was to void the transfer, in effect placing the stock shares back into the Family Trust. *Id.* at 594.

On appeal, this Court vacated the order, finding that the trial court erred by entering the judgment without joining Glenna's sons, who we held were jurisdictionally indispensable parties to the lawsuit. *Id.* at 601. The Texas Supreme Court granted review of that opinion in December of 2023, and the matter remains pending at this time.

## C. The estate litigation

In the meantime, in June 2022, Mark filed a "Petition for Accounting and Distribution" in the estate proceedings pursuant to § 405.001(a) of the Texas Estates Code. *See* TEX. EST. CODE ANN. § 405.001(a) ("[A]fter the expiration of two years after the date the court clerk first issues letters testamentary or of administration to any personal representative of an estate, a person

interested in the estate then subject to independent administration may petition the court for an accounting and distribution."). In the petition, Mark alleged that although Glenna had fulfilled all the specific bequests in Jeannette's will, she had failed to distribute the estate's residual assets to the Family Trust in accordance with Jeannette's wishes. He therefore sought to have Glenna "prepare and submit to the Court a full accounting of her administration of the Estate and to provide any additional information the Court considers necessary to determine whether any part or all of the Estate should be distributed." He also requested that upon the court's receipt of Glenna's accounting and after notice to her and a hearing, the court "order the distribution of the Estate to the devisee under the decedent's probated Will."

On September 8, 2022, Glenna filed her accounting, acknowledging that the specific bequests in the will had been fulfilled.[1] Of the assets remaining in the estate, Glenna listed $287,500 in real property; over $4,000,000 in various bank accounts; and approximately $360,000 in stocks. Glenna reported that there were no debts remaining, with the exception of: $150,000 she claimed to be owed as executor's compensation; unknown amounts that may be due to taxing authorities; the costs and expenses of the accounting; and "[o]ngoing costs for the administration of the Estate."[2] Mark filed a notice that he was not objecting to the accounting.

Throughout the estate proceedings, Glenna argued that she could not distribute the estate's residual assets until the trust litigation concluded, claiming that the remainder of the estate assets

---

[1] Jeannette also provided in her will that she "may from time to time prepare a hand[-]written list disposing of certain items of tangible personal property and effects that I desire to give to various individuals," and that her executor was "to distribute those properties to the persons designated in such list as if such list had been fully set out in this Will." In her accounting, Glenna referred to a "hand-written note" from Jeannette stating that she wanted Glenna to have the grandfather clock currently located at Glenna's house. Mark did not contest Glenna's right to the clock.

[2] In her appellate briefing, Glenna no longer contends that any taxes are owed.

4

were to go directly into the individual trusts, and that she needed to know the value of the W. Silver shares before she could ascertain the equivalent amount to which Mark was entitled. In addition, Glenna claimed Mark had violated the "no contest" provisions in Jeannette's will and the Family Trust by initiating the trust litigation, and the probate court needed to rule on that issue before she could determine whether Mark was entitled to any of the estate's residual assets.[3] Glenna also argued that Lauren—who was a former shareholder in W. Silver—had also violated the no-contest provisions by bringing a lawsuit seeking a valuation of the W. Silver stock to determine her interest following Glenna's transfer of the stock. According to Glenna, all these issues needed to be resolved before she could make a final distribution of the estate's assets.

## D.  The probate court's ruling and the parties' arguments on appeal

After a series of hearings, the probate court signed an order finding "there is no continued necessity for administration of the Estate of Jeannette Fenenbock and that distribution is warranted" pursuant to § 405.001(b) of the Texas Estates Code. The court then ordered that "Gaddy, as Executor of the Estate of Jeannette Fenenbock, shall make a partial distribution of $3,000,000 from the residue of the Estate to Glenna Gaddy and Mark Fenenbock, Co-Trustees of [the 2008 Family Trust]." The court's order did not address Glenna's claim that Mark and Lauren

---

[3] The will's "no contest" provision stated:
> [I]f any beneficiary under this Will or the Trust Agreement, individually or in conjunction with any other person or persons, contests in any court the validity of this Will or the Trust Agreement, or seeks to obtain an adjudication in any proceeding in any court that this Will or the Trust Agreement or any of the provisions of either is void, or seeks otherwise to void, nullify or set aside this Will or the Trust Agreement, or any of the provisions of either, then in such event, any gift in that person's favor under this Will or the Trust Agreement shall be revoked and the property that is the subject of that gift shall pass as if that person had predeceased me prior to the execution of my Will or the Trust Agreement.

The Family Trust contained a similar "no contest" provision, stating that any beneficiary under the trust or will who contests the validity of either document would forfeit his or her bequest.

had violated the no-contest provisions in the will and trust, nor did it address her claim that she could not distribute the estate assets prior to the resolution of the trust litigation.

At the hearing on Mark's motion for entry of judgment, the parties pointed out that the order was contradictory, as it found there was no continued necessity for the estate's administration yet only made a partial distribution of the estate's assets. The probate court agreed, stating the error would be corrected. The record does not contain a corrected order.

Glenna filed a notice of appeal from the probate court's order, and Mark filed a notice of cross-appeal. On appeal, Glenna characterizes the order as a defective or void grant of injunctive relief and urges us to reverse the probate court's order in its entirety, pointing to its inconsistency and contending there is still a continuing need for the estate's administration given the assets remaining in the estate and the outstanding issues in the trust litigation regarding the valuation of the W. Silver stock and whether Mark, Lauren, or both violated the no-contest provisions. She further argues that the trial court erred in ordering distribution of estate assets to the Family Trust rather than directly to the individual trusts, which she claims was contemplated by the trust agreements.[4] Rejecting the position that the order is injunctive in nature, Mark contends we should affirm the portion of the order finding there is no continued need for the estate's administration; reverse the portion making a partial distribution of the residual assets; and remand the matter to the probate court to make a full distribution of all remaining assets to the only named distributee—

_____

[4] Glenna raised a similar issue in the trust litigation, arguing that her unilateral decision to transfer the shares of the W. Silver stock to her individual trust did not impact Mark, as the terms of the Family Trust agreement contemplated that the stock shares were to be transferred to her individual trust upon Jeannette's death. *Matter of Tr. A & Tr. C, Established Under Bernard L. & Jeannette Fenenbock Living Tr. Agreement, Dated March 12, 2008*, 651 S.W.3d 588, 593–94 (Tex. App.—El Paso 2022, pet. granted). And Glenna asserts that any remaining distributions to individual trusts could take the value of that transfer into account.

the Family Trust.

Because we lack jurisdiction over the appeal, we do not reach the merits of the parties' arguments.

## APPELLATE JURISDICTION

Without jurisdiction, we have no power to address the merits of an appeal; accordingly, we must determine whether we have jurisdiction of an appeal even when the parties do not raise the issue. *In Matter of Estate of Romo*, 469 S.W.3d 260, 262 (Tex. App.—El Paso 2015, no pet.) ("[W]e must consider our jurisdiction, even if that consideration is sua sponte." (quoting *Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621, 624 (Tex. 2012))); *see also Rattray v. City of Brownsville*, 662 S.W.3d 860, 868 (Tex. 2023) (recognizing that a "court may not reach the merits if it finds a single valid basis to defeat jurisdiction").

### A. Absent an express statute, probate orders are final and appealable when they dispose of all parties or issues in a phase of the proceedings.

Like orders in general civil cases, orders in probate cases must be final to be appealable. *See* TEX. EST. CODE ANN. § 32.001(c) ("A final order issued by a probate court is appealable to the court of appeals."). Unlike general civil cases, however, in the probate field, "an order may be considered final even if it does not dispose of the entire probate proceeding." *In re Estate of Coleman*, 360 S.W.3d 606, 609 (Tex. App.—El Paso 2011, no pet.). This is because "[a] probate proceeding consists of a continuing series of events, in which the probate court may make decisions at various points in the administration of the estate on which later decisions will be based." *In re Estate of Padilla*, 103 S.W.3d 563, 565–66 (Tex. App.—San Antonio 2003, no pet.) (citing *Logan v. McDaniel*, 21 S.W.3d 683, 688 (Tex. App.—Austin 2000, pet. denied)). The need to review

7

controlling, intermediate decisions in a probate case before an error can harm later phases of the proceeding has been held to justify modifying the "one final judgment" rule. *Id.* at 566; *see also In Matter of Estate of Romo*, 469 S.W.3d at 262 (recognizing same).

In light of this recognized need, the Texas Supreme Court developed the *Crowson* test, which sets forth two instances in which a probate court order may be appealable without disposing of the entire proceeding. *Crowson v. Wakeham*, 897 S.W.2d 779, 783 (Tex. 1995). First, a probate court order is considered final and appealable when "there is an express statute . . . declaring the phase of the probate proceedings to be final and appealable," and in that instance, the "statute controls." *Id.*; *see also De Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006) (recognizing same). Second, when no express statute controls the matter, a probate court order may still be considered final and appealable when it "dispose[s] of all parties or issues in a particular phase of the proceedings." *De Ayala*, 193 S.W. 3d at 579; *see Crowson*, 897 S.W.2d at 783 (stating an order is interlocutory when the order can be logically considered part of a proceeding that involves issues or parties not disposed of); *see also In re Estate of Coleman*, 360 S.W.3d at 609 (recognizing same). In this instance, we must determine "(1) if there is a particular phase of the probate proceedings of which the [j]udgment[] logically may be considered a part, and (2) if [so, whether] the probate court disposed of all parties and all issues in this phase." *Gruss v. Gallagher*, 680 S.W.3d 642, 651 (Tex. App.—Houston [14th Dist.] 2023, no pet.) (citing *De Ayala*, 193 S.W.3d at 578–79). If an order merely "sets the stage for the resolution" of a phase of the proceedings, it will not be considered final and will instead be considered interlocutory in nature. *See De Ayala*, 193 S.W.3d at 579 (finding order refusing to remove executor did not end a stage of the proceedings and was therefore interlocutory); *Crowson*, 897 S.W.2d at 781–83 (holding order

8

adjudicating one party's heirship claims was interlocutory, as it did not adjudicate all the other parties' heirship claims).

## B. We characterize the probate court's order as a partial distribution of estate assets.

Our determination of whether the probate court's order can be considered final and appealable thus depends on how we classify the order. "[I]t is the character and function of an order that determine its classification." *Qwest Commc'ns Corp. v. AT & T Corp.*, 24 S.W.3d 334, 336 (Tex. 2000) (citing *Del Valle Indep. Sch. Dist. V. Lopez*, 845 S.W.2d 808, 809 (Tex. 1992)).

As the parties acknowledge, the probate court's order was contradictory by finding "that there is no continued necessity for administration of the Estate" and ordering Glenna to "make a partial distribution of $3,000,000 from the residue of the Estate" to the Family Trust. The Estates Code provides that upon receiving an accounting in an independent administration of an estate, a probate court may do one of two things. TEX. EST. CODE ANN. § 405.001(b). "[U]nless the court finds a continued necessity for administration of the estate, the court shall order its distribution by the independent executor to the distributees entitled to the property." *Id.* § 405.001(b). But if the court "finds there is a continued necessity for administration of the estate, the court shall order the distribution of any portion of the estate that the court finds should not be subject to further administration by the independent executor." *Id.* Accordingly, a court may not, as the probate court did here, find there is no continued necessity for the administration of an estate while ordering only a partial distribution of the estate's assets.

The court's finding that there was no continued necessity for the administration of the estate had no true impact on the case under these circumstances, as it did not serve to close the estate since the court's order left well over a million dollars in assets in the estate. In addition to

9

the variety of formal ways Estates Code § 405.003 through 405.007 provide to close an estate subject to independent administration, the Code provides that an estate may be informally closed when the independent executor has made a final distribution of all assets and no debts remain to be paid. *See id.* § 405.012 ("An independent executor is not required to close the independent administration of an estate under Section 405.003 or Sections 405.004 through 405.007."); *see also Mims-Brown v. Brown*, 428 S.W.3d 366, 375 (Tex. App.—Dallas 2014, no pet.) (recognizing that the statutory closing procedures are not mandatory and that the final distribution of an estate's assets after all debts and claims against the estate are paid results in the closing of an estate that is subject to independent administration) (citing *Interfirst Bank–Houston v. Quintana Petroleum Corp.*, 699 S.W.2d 864, 874 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.)). But because a final distribution was not made and none of the other steps necessary for a formal closure occurred, the order's only true function was to direct the partial distribution of assets to the Family Trust. We therefore characterize it as such.

## C. An order of partial distribution is not a final, appealable order.

Having characterized the order as a partial distribution order, we conclude that the order was not a final, appealable order under the *Crowson* test. First, there is nothing in the Estates Code making an order of partial distribution of assets a final order subject to appeal.[5] *See Wilcox v. Wilcox*, No. 09-08-132 CV, 2008 WL 2917169, at *1 (Tex. App.—Beaumont July 31, 2008, no pet.) (mem. op.) ("The statutes that govern distribution of estates do not provide for interlocutory appeal of such rulings.").

---

[5] We consider separately below Glenna's argument that the probate court's order can be considered a mandatory temporary injunction that is an appealable interlocutory order under the Texas Civil Practices and Remedies Code.

Second, the partial distribution order did not end a discrete phase of the proceedings. As explained above, the order left well over a million dollars remaining in the estate subject to future distribution. In addition, as Glenna points out, the record reflects that the probate court did not consider her objections to the distribution. In similar situations, courts have held that an order of partial distribution leaving assets to be distributed and issues to be resolved cannot be considered a final, appealable order under the *Crowson* test. *Id.* (citing *Crowson*, 897 S.W.2d at 783) (holding order making a partial distribution of estate assets could not be considered a final order under the *Crowson* test where issues remained to be resolved in the probate court proceedings, and the estate was subject to future distributions); *see also In re Estate of Berry*, No. 07-07-0135-CV, 2008 WL 2640711, at *3 (Tex. App.—Amarillo June 27, 2008, no pet.) (mem. op.) (characterizing order requiring independent executor to deliver a sum of money to beneficiaries as a partial distribution order, which was interlocutory in nature, where additional funds remained in the estate and where outstanding issues remained due to parties' disagreement over the executor's inventory); *see generally* Craig Hopper, D'Ana H. Mikeska, *O'Connor's Texas Probate Law Handbook* Ch. 8–E § 8. (2024 ed.) ("An order decreeing a distribution is not a final appealable order unless it results in the distribution of the entire estate.").

While Glenna and Mark disagree over what issues must be addressed prior to closing the estate, the record reflects that there are pending issues which the order does not resolve. And as the order did not effect a final distribution of the estate assets, we conclude that it cannot be considered a final order under the *Crowson* test and must instead be categorized as interlocutory in nature.

**D. The order was not an appealable order granting a temporary injunction.**

And finally, Glenna seeks to characterize the probate court's interlocutory order as a "temporary injunction," which would make it appealable under § 51.014(a)(4) of the Texas Civil Practices and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (a "person may appeal from an interlocutory order of a . . . statutory probate court . . . that . . . grants or refuses a temporary injunction."). We agree with Mark, however, that the order cannot be characterized that way.

**(1) Whether an order can be classified as an injunction depends on its nature and function.**

In general, the function and purpose of a temporary injunction is to "preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993)). There are two general types of temporary injunctions: a prohibitive injunction, which forbids conduct, and a mandatory injunction, which requires it. *Pharaoh Oil & Gas, Inc. v. Ranchero Esperanza, Ltd.*, 343 S.W.3d 875, 882–83 (Tex. App.—El Paso 2011, no pet.). When we consider whether an order is a temporary injunction and therefore appealable, matters of form do not control over "the nature of the order itself—it is the character and function of an order that determine its classification." *Del Valle Indep. Sch. Dist.*, 845 S.W.2d at 809; *see In re Tex. Nat. Res. Conservation Comm'n*, 85 S.W.3d 201, 205 (Tex. 2002) ("Whether an order is . . . an appealable temporary injunction depends on the order's characteristics and function, not its title.").

**(2) The probate court's order cannot be characterized as a temporary injunction.**

Glenna contends the order can be characterized as a mandatory temporary injunction

12

because it requires her to take certain action, i.e., to make a partial distribution of estate assets and to do so within a short period of time "during the pendency of the suit." And she contends the order should be considered void because it does not comply with the requirements for issuing such an order, as Mark did not plead or prove that he had a probable right to the relief sought, or that he would suffer probable, imminent, and irreparable injury in the interim if the relief was not granted. *See Pharaoh Oil & Gas, Inc.*, 343 S.W.3d at 880 (citing *Butnaru*, 84 S.W.3d at 204) ("To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim."). Glenna further points out that the court did not order Mark to post a bond as required by Rule 684 of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 684 ("In the order granting any temporary restraining order or temporary injunction, the court shall fix the amount of security to be given by the applicant.").

It is true that if a trial court issues an order that is properly characterized as a temporary injunction but fails to meet these requirements, it is still considered a temporary injunction, albeit a void one. *Qwest Commc'ns Corp.*, 24 S.W.3d at 336–37; *see In re Estate of Skinner*, 417 S.W.3d 639, 642–44 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (recognizing that deficiencies in an order do not control its classification). However, for the reasons set forth below, we do not find that the order can be characterized as such.

First, we find it significant that Mark did not request a temporary injunction, nor did the probate court designate its order as a temporary injunction. *See Swanson v. Cmty. State Bank*, 12 S.W.3d 163, 165–66 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (holding that the trial court's order was not an injunction because although it ordered one party to liquidate stock, the movant

13

had "requested the trial court's permission to liquidate" the stock, and the movant "did not ask for relief directing the defendants to do or refrain from doing anything"); *Young v. Golfing Green Homeowners Ass'n*, *Inc.*, No. 05-12-00651-CV, 2012 WL 6685472, at \*2 (Tex. App.—Dallas Dec. 21, 2012, no pet.) (mem. op.) (determining that an order was not a temporary injunction because, inter alia, the appellant had not sought injunctive relief and the complained-of order "was not based on any pleadings seeking temporary injunctive relief").

Instead, Mark filed his petition for an accounting and distribution of the estate assets pursuant to § 405.001(a) of the Estates Code, which, as set forth above, allows for an interested party in an independent administration of an estate to make such a request after a certain amount of time has passed. *See* TEX. EST. CODE ANN. § 405.001(a). And in granting the petition in part, the court expressly based its order on § 405.001(b) of the Estates Code, which permits a court to issue an order of partial distribution of estate assets. *See id.* § 405.001(b). As Mark points out, Glenna's attempt to portray the order as a temporary injunction, rather than an order falling under the provisions of the Estates Code, would be contrary to the courts' pronouncements in this area regarding the appealability of probate court orders under the *Crowson* test.

Furthermore, taken to its logical extreme, Glenna's argument that we should characterize the probate court's order as a temporary injunction simply because it requires her to take certain action would turn every probate court order directing an independent executor to engage in conduct into an appealable temporary injunction. Again, this would conflict with the carefully crafted test for determining when probate court orders can be considered as final, appealable orders and would flood appellate courts with appeals from interlocutory orders in estate proceedings.

Accordingly, we reject Glenna's argument that the probate court's order of partial

14

distribution can be characterized as an appealable temporary injunction.

## CONCLUSION

Because we find that the probate court's order directing a partial distribution of the estate's assets is not an appealable order, we dismiss the appeal for want of jurisdiction. This dismissal is without prejudice to the parties' ability to timely perfect an appeal from an appealable order or judgment that the probate court may issue in the future.

LISA J. SOTO, Justice

March 28, 2024

Before Alley, C.J., Palafox and Soto, JJ.